# The Town of Lake View

## *v.*

## John LeBahn.

*Filed at Ottawa November 13, 1886.*

1. Town Plat—*certifying the same, under act of 1845.* The statute of 1845 did not require the county commissioners to certify a town plat, except where they laid out the town, or made an addition thereto. Where other persons made the plat, they, only, were required to acknowledge it.

2. Same—*certainty in surveyor's plat—as to the meaning of figures in giving the length of lines.* A surveyor's plat of the subdivision of land into lots and streets showed the streets by name, and gave the numbers to the lots, with the number of acres they contained, and there were figures intended to indicate the length of the lines showing the streets and the boundaries of the lots, but there was nothing to show whether the figures meant feet, inches, chains, or links: *Held*, that as the plat was made by a surveyor, the measurements indicated thereon should be taken as surveyor's measurement of chains and links,—not long measure of feet and inches,—and that the plat was not void for uncertainty in that regard.

3. Dedication—*quantity in lots described by acres, which must include parts of streets, and their assessment accordingly—effect on the dedication.* Where a lot or block is marked on the recorded plat as containing so many acres, which it contains only by including one-half of the street on each side

thereof, and it is assessed as of that number of acres, this will not defeat a dedication of the ground marked as a street.

4. Same—*acceptance by the public—of the time allowed.* The immediate opening and use, by the public, of all the streets in ground laid out and platted into lots, for their entire length, or an immediate formal acceptance by some competent public authority, is not necessary to give effect to the dedication of land to the public use, of a street, by the making of a town plat and the selling of lots with reference to the plat. The public authorities must be allowed a reasonable time for opening and improving public streets, as their resources and the public necessity may allow and require.

5. Same—*right of revocation.* Where land has been dedicated to the public for streets, by the acknowledgment and recording of a proper town plat, under the statute, the dedication can not be revoked by the owner, even before acceptance by the public. The proper authorities are not bound to accept such a dedication at once.

6. Where the owners of land laid out the same into blocks, with streets between, so that each block has an easement in the street, and the blocks are divided among the owners thereof according to such plat, this will amount to more than a mere dedication of the streets, it being based upon a valuable consideration. In such case, the dedication will not be revocable by any of the block owners.

Appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

This was a bill in equity, brought by John Le Bahn, to enjoin the town of Lake View from disturbing the complainant in his possession of the north thirty-three feet of block 5, in a subdivision of the south-west half of the north-west quarter of section 29, town 40, north, range 14, in Cook county, and from prosecuting him for alleged obstruction of said strip of land as a street. The court below, on hearing, granted the relief asked, and the defendant has appealed.

In the year 1870, Barbara Diversey, Catharine Weckler, Mary W. Biehl and Elizabeth Kerchoff, as the heirs-at-law of Michael Diversey, deceased, were the owners of an undivided half of the above described land, containing eighty acres, and situated in the town of Lake View, in Cook county, in this State,—the other undivided half being owned by William Lill. Barbara Diversey instituted proceedings in the Superior Court of said county, for a partition of the premises. In the spring

of 1871, these proceedings had so far progressed that a de-
cretal order for partition was entered, and com-
missioners appointed to make the division.
Subsequent to this order, and before
the report of the commissioners, the
parties themselves caused a sub-
division of the premises to
be made into streets and
blocks. A copy of the
plat or map of the
same is hereto
subjoined:

The plat is properly signed by all the owners, and properly acknowledged. Alexander Wolcott, county surveyor, certifies to the subdivision, under date February 25, 1871. The plat was recorded in the recorder's office of Cook county, March 2, 1871.

The commissioners, in the partition suit, proceeded with their division of the property between the several owners, with reference to said subdivision as so made by said owners, and allotted to William Lill, blocks 1, 5, 7, 9, 11, 13 and 15 thereof; to Barbara Diversey, blocks 6 and 14; to Mrs. Kerchoff, blocks 8 and 12; to Mrs. Biehl, block 4 and the west $2\frac{71}{1000}$ acres of block 2; and to Mrs. Weckler, blocks 10 and 16; and the title was confirmed in the respective parties by the final decree. William Lill died in 1875, still owning block 5. The trustees under his will, with power to sell and convey his real estate, conveyed block 5, by deed dated November 1, 1880, to the complainant and his brother, Charles. The language of the conveyance describing the property, is:

"Block 5, of William Lill and heirs of Michael Diversey's subdivision of S. W. $\frac{1}{2}$, N. W. $\frac{1}{4}$, Sec. 29, T. 40, N. R. 14." These brothers, with another, were co-partners in the brick manufacturing business, and bought the block for that purpose. George street, which runs along the north line of block 5, is the street in question in this suit. This street was opened from Lincoln avenue on the east, as far west as Perry street, in

1877, and the town authorities, at the time of filing this bill, were proceeding to open George street, between blocks 5 and 10, through west to Reuben street, now called Ashland avenue. On March 2, 1871, at the time of recording the plat, the whole eighty acres were included in one inclosure. Soon after, the fence along the north-east side of the inclosure was removed. About two years after the recording of the plat, the owners of the ground made a new inclosure, embracing blocks 4, 5, 10 and 11. The fences coincided with the solid block lines shown on the plat. A gate was placed in this fence at George street. This inclosure has remained and been in the possession of the then owners and their grantees ever since. Complainant has sheds and a sand pile on the thirty-three feet strip in question. One Schrader had purchased block 10, shown on the map, next north of block 5, and in 1881 he built a cottage and barn on the south edge of block 10, and it is built up to the dotted line on the plat between the blocks, which would need to be removed if George street were opened through to Reuben street or Ashland avenue. As early as 1871, the streets in this subdivision began to be opened. Southport avenue was opened in that year. Perry street was opened in 1873 or 1874. George street, as before observed, as far west as Perry street, in 1877. Wolfram street in 1880.

It appears that in 1874 or 1875, the overseer of highways in the town of Lake View built a culvert over the ditch on the east side of Ashland avenue, across George street, so as to admit of passing from one street to the other. The owners set out trees on several of the streets. Trees were planted on the north, south and east sides of block 5. Water pipes were put in several of the streets, under an ordinance of the town. They had been laid in George street, as far west as Perry street. Repeated efforts were made, from 1881 to 1884, to get the town authorities to open George street west of Perry street, while a brother of complainant was a member of the town board, but they were without success.

Mr. Hervey H. Anderson, for the appellant:

A substantial compliance with the statute, in platting a town or subdivision, is all that is required to make the plat operate as a conveyance of the streets. 2 Dillon on Mun. Corp. (3d ed.) 625; *Thomas* v. *Eckard*, 88 Ill. 593.

As to a dedication at common law, and how made and shown, see *Rees* v. *Chicago*, 38 Ill. 336; *Littler* v. *Lincoln*, 106 id. 353; *Cincinnati* v. *White's Lessee*, 6 Pet. 531; *Winnetka* v. *Prouty*, 107 Ill. 225; *Waugh* v. *Leech*, 28 id. 489; *Alvord* v. *Ashley*, 17 id. 363.

An acceptance may be shown by user by the public, as, by travel, or by the acts of the public officers in repairing and keeping it up. *Rees* v. *Chicago*, 38 Ill. 336; *Littler* v. *Lincoln*, 106 id. 353.

' Acceptance of a part is of the whole. *Derby* v. *Alling*, 40 Conn. 410; *Henshaw* v. *Hunting*, 1 Gray, 203; *Jersey City* v. *Banking Co.* 1 Beas. 547.

The courts will take judicial notice of the width of streets in general. *Winnetka* v. *Prouty*, 107 Ill. 225.

When the memorandum is abbreviated or elliptical, so as not to be intelligible without explanation, an expert may be called to prove what the words mean. *Sheldon* v. *Benham*, 4 Hill, 129.

More importance attaches to a black continuous line on a plat than a light dotted one. *Princeton* v. *Templeton*, 71 Ill. 70.

The fact that the land is taxed for city and county purposes will not conclude the public from claiming the use of the land for a public street. *Leman* v. *Hayden*, 13 Wis. 159; *Wyman* v. *State*, id. 663; *Chicago* v. *Wright*, 69 Ill. 319.

Mr. John P. Altgeld, and Messrs. Frank J. Smith & Helmer, for the appellee:

The statute requires the plat to give the names, widths, corners, boundaries and extent of all the streets and alleys. Gross' Stat. 1869, (3d ed.) secs. 35, 36. The plat in this case

7—120 Ill.

is deficient in these respects, and therefore fails to pass the title to the streets.   *Winnetka* v. *Prouty,* 107 Ill. 218.

That in this State an acceptance of proffered dedication to public uses is necessary to impose upon the authorities the burden of the care of public property, and to vest in them any right over the property, is too well settled to require discussion. *Littler* v. *Lincoln,* 106 Ill. 353 ; *Gentleman* v. *Soule,* 32 id. 279 ; *Rees* v. *Chicago,* 38 id. 336 ; *Trustees* v. *Walsh,* 57 id. 371 ; *Heiner* v. *Jeanport,* 65 id. 430 ; *Wragg* v. *Penn,* 94 id. 25.

To make a dedication, either under the statute or at common law, requires a definite and certain description of that proposed to be dedicated, and an acceptance before a withdrawal of the offer to dedicate.   *Winnetka* v. *Prouty,* 107 Ill. 218 ; *Littler* v. *Lincoln,* 106 id. 353 ; *Trustees* v. *Walsh,* 57 id. 370.

Where the city, which has exclusive jurisdiction and control over the streets and alleys therein, and represents the public in respect thereto, treats the ground as private property, and makes assessment upon it as such, this is strong, if not conclusive, evidence, that it has not been accepted by the public as a street.   *Marsur* v. *State,* 60 Ind. 357.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The statute under which this plat was made, requires the owners to cause the town or subdivision to be surveyed by the county surveyor, and the plat thereof to describe particularly all the streets, etc., within or adjoining the same, giving the names, widths, corners, boundaries and extent of such streets ; that out-lots shall not exceed ten acres in size, shall be progressively numbered, and their precise length and width stated on the plat or map, together with any streets, etc., which shall divide or border on the same.   The statute provides that a plat made out in conformity to its provisions shall operate as a conveyance, in fee, of the land intended for streets,

and that they shall be held in the corporate name of the municipality, for the uses and purposes expressed or intended. Rev. Stat. 1845, p. 115.

Objection is taken to the plat as not being in accordance with the statute, in that it was not certified to by the county commissioners. We do not understand the statute to so require. It provides for the case of laying out towns or subdivisions by county commissioners, or other persons; and as we read the statute, where county commissioners cause the plat to be made, they are to acknowledge it, and where other persons cause the plat to be made, they only are required to acknowledge it, and that the plat need only to be certified by the county surveyor.

The only other objection made to the plat is, that it is indefinite and uncertain, in not giving the length and width of the streets and blocks; that there are naked figures here and there upon the plat, but nothing to show what any of the figures mean. They evidently denote lengths of lines. But then it is said, there is nothing on the plat to determine whether inches, feet, rods, chains or links are intended by the figures. Let us see if this be so. Take George street, the one in question, and we find at each end the figures, "50" and "50," on each side of the dotted line running through the middle of the vacant space. There is no doubt these figures represent the width of George street. We reasonably know that as a street it was not intended to be one hundred inches, one hundred rods or one hundred chains wide. It can then be only feet or links which the figures represent. We are to look upon this as a plat made by a surveyor, and from an examination of the plat it would seem apparent, to a person of ordinary intelligence, that the measurement indicated thereon is surveyor's measurement,—chains and links,—and not long measure,—feet and inches. At least with a competent surveyor, from the *data* which appear upon the plat, the various figures representing lines of different lengths, the dimensions

which are given of all the blocks, there could be no manner of doubt that the measurement used was chains and links, and not feet and inches.   Accordingly, the witness Alvorda, surveyor, says the width of the streets as platted in the subdivision is one hundred links,—sixty-six feet wide.   We consider the figures "50" and "50," at each end of George street, denote that street to be one hundred links wide, just as unmistakably as if it had been written in words on the face of the plat, George street is one hundred links wide.   And so, in our judgment, there is enough appearing upon the face of the plat to determine what is the length of all the other lines appearing thereon.   We view the plat as in substantial compliance with the provisions of the statute.

The case of *Village of Winnetka* v. *Prouty*, 107 Ill. 218, referred to by appellee's counsel, where a plat was held to be insufficient under the statute, is plainly distinguishable from the present case.   The plat there did not show the devotion of any ground to public use.   In that case, there were no streets named or mentioned on the plat,—there was no strip of land which was even called a street.   Vacant spaces upon the plat, which might be imagined to have been intended for streets, there was nothing upon the plat to show what was their width,—not even any figures which might be supposed to denote it,—upon the street there in question.

It is said there was no acceptance by the town prior to 1873, when the owner fenced in this particular strip of thirty-three feet, and has ever since held possession of the same, and that acceptance by town authorities is necessary prior to withdrawal of a tender of dedication.   However this may be in the case of an ordinary common law dedication, we can not recognize the doctrine as applying where there has been a statutory dedication.   In such case, the statute says, the plat shall be deemed a sufficient conveyance to vest the fee simple in the streets in the municipality, and we do not admit any power of withdrawing the dedication.   In *Waugh* v. *Leech,*

28 Ill. 492, this court said, upon this subject: "We certainly think a more unequivocal mode of dedication of streets could not be adopted than surveying and platting the ground and selling lots abutting on the streets, even if the streets should not be used by the public. If they are not reclaimed by the original proprietor in some mode authorized by law, they remain public, open to the use of the public, whenever they may choose to appropriate them." And again, page 493: "The fact that White laid out this land into lots, streets and alleys, and had them duly platted, acknowledged and recorded, was a dedication of the streets and alleys to the public as highways,   *   *   *   and they remained highways, with the width designated on the plat, until such time as they should be legally vacated." And see *Town of Derby* v. *Alling*, 40 Conn. 435; *Mayor of Jersey City* v. *Morris Canal and Banking Co.* 12 N. J. 553. In the latter case, in speaking upon this subject of streets, it is said: "There is a large class of cases where the acts of dedication by the owner of the fee are of such a character as to preclude the owner from retracting the dedication, even before any act of acceptance on the part of the public,"—citing many cases.

But were there failure, here, to show a statutory dedication, we are of opinion there was a valid common law dedication. While this eighty-acre tract of land was owned in common by all the original proprietors, they made this plat, and this arrangement of the land for future use and enjoyment, by the division of it into blocks, with streets surrounding each block. With the land thus arranged for use and enjoyment, it was partitioned and divided among the owners, each one taking certain of the blocks as his or her several share. Each block was thus burdened with the easement of a street upon a strip of land thirty-three feet wide around it, and entitled to the benefit of the easement of a street of like width upon the adjoining side of the opposite block, so far as there was a block opposite, thus making a street sixty-six feet wide

around each block, excepting one or two streets, which were a little wider. The blocks were allotted and accepted with these burdens and benefits of streets attached to them as incidents. For the burden of the easement of the street which there was upon each block, there was received the benefit of a like easement in another block. In taking the several blocks of land with the arrangement of this system of streets, there were implied mutual agreements that the streets should ever remain as platted,—a dedication to public use of the ground laid out as streets, as effectual as could have been made by deed solemnly executed. (*Cihak* v. *Klekr*, 117 Ill. 643.) There was more than a mere dedication. There was a valuable consideration moving to each block owner in the making of the division, which should make withdrawal of the dedication beyond his power, further than that the street might be vacated in the mode pointed out by the statute. He took and held an estate upon the condition of its being burdened with the easement of the streets, and the public authorities, in opening and improving the streets, act as the representatives of the lot owners, with others of the public, in so doing. There is no difficulty in regard to the width of the street, as respects a common law dedication. The testimony is, that when this survey was made, stakes were placed at the corners of the blocks, exclusive of the streets, and nowhere else, and that two old surveyor's stakes were discovered a day or two before the hearing in the court below,—one on the south-west corner, and the other on the north-west corner, of Perry and George streets. These stakes were just sixty-six feet apart, and so fix that distance as the width of George street.

If it were necessary in this case that there should be an acceptance by the public in order to render the dedication a valid one, we would regard that as sufficiently shown here. An acceptance may be shown by user by the public, as, by travel, or by the acts of the public officers in repairing and keeping up the streets. (*Rees* v. *City of Chicago*, 38 Ill. 336.) South-

port avenue was opened to public use in 1871,—the very year in which the plat and division were made,—and other streets were opened from time to time. This George street was opened in 1877, its entire length, except between the two blocks 5 and 10. Perry, Diversey, Wellington streets, and Ashland avenue, appear to have been thrown open by the people who owned the ground. In 1874 or 1875 a culvert was built by the town authorities over the ditch on the east side of Reuben street, or Ashland avenue, across the west end of this unopened portion of George street. Immediate opening and user, by the public, of all the streets for their entire length, or immediate formal acceptance by some competent public authority, can not be necessary to give effect to a dedication of land to the public use of a street, by the making of a town plat, and the selling and conveying of lots with reference to the plat. A municipality must be permitted to wait its reasonable time for opening and improving its public streets, as its own resources and the public need may allow and require, without thereby rendering its streets subject to appropriation for the exclusive use and enjoyment of individuals.

A point is made as against the town, in the payment of town and other taxes on this block. It is described in the assessment books, "block 5, $5\frac{32}{1000}$ acres." To make that number of acres, requires the block to be bounded by the dotted line appearing in the plat, in the centre of the streets surrounding the block, and bounding the block by its solid continuous lines gives but about $3\frac{3}{4}$ acres. This assessor's description is the same designation as appears upon the plat. The land of the block does extend to the dotted line in the centre of the street, but the strip of it thirty-three feet wide, between the dotted line and the continuous block line, is subject to the easement of a public street. We see no significance in this payment of taxes. There may sometimes be such circumstances in a particular case which would make it so inequitable for the public authorities to exercise their

power over a public street, as to create an estoppel against their doing so. But there is nothing of that kind in the present case. The town authorities have but suffered the fence to remain across George street until there seemed to them a need for the public use that the fence should be removed. The erections put upon the street were mere encroachments upon a public street, made by the parties with their eyes open, and at their peril. They can remove the same. They gain no right by their encroachment on the street.

The decree will be reversed, and the cause remanded, with directions to dismiss the bill for want of equity.

*Decree reversed.*