[S. F. No. 1208.   Department Two.—August 7, 1899.]

## CITY AND COUNTY OF SAN FRANCISCO, Respondent, v. HONORA SHARP, Appellant.

STATUTORY CONSTRUCTION.—A statute relied upon as conferring rights to a governmental gratuity is to be strictly construed.

SAN FRANCISCO "HOSPITAL LOT"—DEDICATION TO PUBLIC USE—ORIGINAL POSSESSOR NOT ENTITLED TO COMPENSATION.—One claiming under an original possessor of pueblo land which was more than one-twentieth part of the lot designated on the Van Ness map as a "hospital lot," and which was dedicated to public use under the ordinances ratified by the act of March 11, 1858, and the confirmatory act of Congress of July 1, 1864, has no title or estate in the lot which could be asserted against the United States, the state or the city, and is not entitled under section 6 of the Van Ness ordinance to any compensation as a condition precedent to the quieting of the title of the city to such "hospital lot."

ID.—TERMS OF ORDINANCE NO. 822 SUPERSEDED BY RATIFICATION OF VAN NESS MAP.—The terms of section 6 of the Van Ness ordinance were superseded so far as inconsistent with the Van Ness map showing the reservation of lots, blocks, and squares for public use, and with the order adopting said map, and the legislative ratification thereof, which operated immediately to dedicate the lots to public use.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion.

Rodgers & Paterson, and William B. Sharp, for Appellant.

By the ratification of order No. 822, by the act of 1858, appellant became a beneficiary entitled to compensation under section 6 of that order.   The intention of the legislature expressed upon the face of the ratification must prevail.   (*San Francisco v. Mooney*, 106 Cal. 588.)   The ratification was for the benefit of lot claimants, as well as for public uses.   (*Knight v. United States Land Assn.*, 142 U. S. 161; *Palmer v. Low*, 98 U. S. 1; *San Francisco v. Le Roy*, 138 U. S. 656; *San Francisco v. Canavan*, 42 Cal. 555; *Baker v. Brickell*, 87 Cal. 333.)

Harry T. Creswell, City and County Attorney, and Gaillard Stoney, Assistant, for Respondent.

The title to the public squares never did vest in the posses-
sors; the city simply reserved what was her own, and it was a
matter of no consequence that she took more than one-twen-
tieth of the land in the possession of any one person without
compensation, as such person had nothing for which compen-
sation could be exacted. (*Sawyer v. San Francisco*, 50 Cal. 370;
*Hoadley v. San Francisco*, 70 Cal. 324; *Hoadley v. San Fran-
cisco*, 50 Cal. 272; *Board of Education v. Martin*, 92 Cal. 217;
*San Francisco v. Mooney*, 106 Cal. 586; *Hoadley v. San Fran-
cisco*, 124 U. S. 645; *People v. Holladay*, 68 Cal. 439.)

BRITT, C.—Action by the city and county of San Francisco
to quiet title to the tract of land which was designated on the
Van Ness map of 1856 as a "hospital lot," and which was orig-
inally part of the pueblo lands of the city within the corporate
limits as defined by the act of April 15, 1851. Such tract was
within the scope of ordinance No. 822 of the common council of
the city approved June 20, 1855—the Van Ness ordinance, and
the other ordinances following thereon, relating to the disposi-
tion of said pueblo lands, all of which were ratified in terms by
the act of the state legislature approved March 11, 1858. (Stats.
1858, p. 52.) Defendant has possession of a portion of said
tract, and the possession so held by her is continuous with that
of her predecessors in interest, beginning at a time prior to
January 1, 1855. The court below rendered judgment declaring
that plaintiff is the owner of the land in suit "in trust for the use
and benefit of the people of the state of California, and the in-
habitants of the city and county of San Francisco, for the pur-
poses of a public hospital"; and that defendant has no right or
interest in any part of the same.

On appeal, defendant abandons sundry of the defenses set up
in her answer, and admits that as a result of the legislation
above referred to, and the confirmatory act of Congress of July
1, 1864, the said lot was dedicated to public use for purposes
of a hospital; but she claims, as we understand the argument,
that she is entitled to occupy the part thereof in her possession
as aforesaid until the city shall pay to her the value of the
same—found by the court to be the sum of seventy-five thou-
sand dollars—and that the judgment was erroneous in not re-

quiring the city to compensate her to the amount of such value as a condition precedent to quieting its title against her.

The several ordinances mentioned are recited at length in the said act of 1858; and the steps taken by the common council of the city and the commission appointed by it, for the selection of public grounds to be reserved from the general granting provisions of ordinance No. 822, have been described in a number of cases involving the effect thereof as ratified by the legislature, and need not be here rehearsed. (See *Hoadley v. San Francisco*, 50 Cal. 265; 124 U. S. 639; *Sawyer v. San Franciso*, 50 Cal. 370; *Board of Education v. Martin*, 92 Cal. 209.) The claim of the defendant to pecuniary compensation, as above stated, rests on the provision of section 6 of ordinance No. 822 that "the city shall not, without due compensation, occupy for the purposes mentioned in this section" (which included sites for hospitals) "more than one-twentieth part of the land in the possession of any one person." The court found that at the time the said hospital lot was selected and dedicated to public use the portion of the same then in the possession of defendant's said predecessors in interest "comprised more than one-twentieth of the lands in their possession between January 1st and June 20, 1855."

Since the persons through whom defendant claims had no estate in the land which they could assert against the United States, the state of California, or the city, they were equally without legal right to be paid for the same when by appropriate legislation it was dedicated to public uses in charge of the city; the claim now made is therefore to a governmental gratuity, and the statute under which it is advanced—the act of March 11, 1858—is to be construed strictly against the pretensions of the claimant; ambiguities therein, if any, are to be resolved against the demand. (*Oakland v. Oakland Water Front Co.*, 118 Cal. 160.) Three ordinances were ratified by the act of 1858. Section 6 of the first—No. 822—contained several restrictions on the power to reserve lots for public uses; thus, it was declared that public squares or parks "shall not embrace more than one block, corresponding in size to the adjoining blocks"; also that the selection of lots to be reserved "shall be made within six months from the time of the passage of this

ordinance"; and that the city should not occupy more than one-twentieth part of the land in the possession of any one person "without due compensation." But it is perfectly clear that the third of said series of ordinances—the order of October 16, 1856, adopting the Van Ness map—was passed in utter disregard of the said restrictions of ordinance No. 822, relating to the time limit for the selection of the reserved lands and relating to the size of the parks; for such limit of time expired December 20, 1855, not having been previously extended, and the Van Ness map showing the selections made by the commissioners was not reported to the common council until April 19, 1856; while the public squares shown on the map and dedicated by its adoption included in most instances four blocks, instead of one as provided by ordinance No. 822. These departures from the original scheme have been held to affect in no wise the dedication of the reserved grounds. (*San Francisco v. Mooney*, 106 Cal. 586, and cases cited.) The language of the order of October 16, 1856, was that the Van Ness map be adopted "in respect to . . . . the reservation of squares and lots for public purposes"; by the ratification of this order in the statute of 1858 it acquired the force of law, and operated immediately to dedicate the lots to public use. (*Hoadley v. San Francisco, supra.*) Since, therefore, the order of October 16 had, and was obviously intended to have, this effect, notwithstanding that it ignored some of the most important of the conditions which, by the terms of ordinance No. 822, hampered the right of the city to reserve land for its own purposes, it is a very natural inference that it was meant to disregard also the provision by which the city was to be required to pay the possessors of the lots dedicated for something they did not own, viz., the right to occupy the same. If this is not so we should have the anomaly of land completely dedicated to public uses, which yet the public cannot use without paying its value to persons who have no title or estate in the land itself. While such a condition might possibly be created by statute, all intendments in the construction of the act of 1858 should, for reasons already stated, be indulged against it.

The effect of the analogies above suggested is sought to be avoided on the ground that section 6 of ordinance No. 822 did

not forbid the city to take more than one-twentieth of the land possessed by any one person, but, on the contrary, contemplated that more might be taken upon making compensation to the occupants, and that accordingly the actual dedication of more than one-twentieth of the lands possessed by defendant's grantors shows no intent not to pay for it. This is hardly a sufficient answer; the question in one case (for example) is whether the legislature intended to dedicate finally land which by the terms of said section 6 was not subject to reservation at all; in the other (the case here), whether it intended to dedicate finally land which the same section forbade to be occupied—certainly an indispensable step in any effectual dedication to public use—without paying the value to the possessors. It seems to us that the present and complete dedication contemplated by the order of October 16, 1856, confirmed by the statute of 1858, was inconsistent alike with all the restrictions of said section 6. (See *Sawyer v. San Francisco*, 50 Cal. 370; *Holladay v. San Francisco*, 124 Cal. 352.) The present decision might, perhaps, be rested on the authority of Sawyer's case, just cited; but defendant characterizes the view there expressed touching the present subject as dictum merely, and contends that for other reasons it is not controlling; and since, besides this case, there are others now pending for decision in which reliance is placed on the main contention urged for defendant here, we have preferred to respond directly to the question of the proper construction of the statute of 1858. We think defendant is not entitled to the compensation she claims, and that the judgment appealed from should be affirmed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Henshaw, J., Temple, J., McFarland, J.