[Civ. No. 3335. First Appellate District, Division One.—July 26, 1920.]

## HUMBOLDT COUNTY, Respondent, v. ISAAC HENRY VAN DUZER et al., Appellants.

[1] ADVERSE POSSESSION — DEDICATION TO PUBLIC USE — EVIDENCE—FINDING.—In this action by a county to quiet title to a strip of land acquired by it for the purpose of a public road and ferry crossing, but to which the defendant claimed title by adverse possession and user for a period of upward of thirty years, from the evidence showing that the land in question has been in use by the public as a road, and that appraisers appointed by the supervisors had prepared a map showing the location of land to be acquired, and had designated the land in question "New Road," followed by a deed of conveyance to the county, for a money consideration, the trial court was justified in finding that the land had been accepted and used as a public road and ferry crossing.

[2] ID.—ACCRETION—APPLICATION OF LAW TO COUNTY PROPERTY.—The law of accretion applies to the property of a county as well as to that of an individual.

[3] ID.—DISCONTINUANCE OF PUBLIC USE—ACQUISITION BY ADVERSE POSSESSION.—Property once dedicated, set apart, or held for a public use cannot be acquired by a private owner by adverse possession, even while its public use may be discontinued.

[4] ID.—ABANDONMENT OF PUBLIC USE—INTENTION — NONUSER. — To effect an abandonment of an easement or public use of property acquired by grant to the public authorities, the intention to abandon must be clearly manifest. Mere nonuser of an easement acquired by grant does not amount to an abandonment.

[5] ID.—INTENTION TO ABANDON—EVIDENCE OF.—Neither the action of the board of supervisors in releasing the ferryman who was operating a ferry across the river from the land which had been dedicated to public use as a road from the obligation of operating such ferry, and a year later granting a license to a new man to operate a ferry at that point, nor the fact that the latter operated the ferry in whole or in part between new lands, and used different approaches to the landings, showed an intention on the part of the public authorities to abandon the road, such events being merely evidence of a nonuser of the land in question by the public as a highway.

[6] ID.—CLEARING AND CULTIVATION—PROFIT — ESTOPPEL. — The fact that the county allowed defendant to clear and cultivate the land

in question will not estop it from asserting title to such land, particularly where the defendants profited by the use of the land in excess of the expenditure made in clearing it.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

G. W. Hunter for Appellants.

A. W. Hill and H. C. Nelson for Respondent.

KOFORD, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff quieting title against defendants to a strip of land in Humboldt County, acquired by the county in the year 1880, for the purpose of a public road and ferry crossing over Eel River.

The land in question was deeded in 1880 to the county by defendant Van Duzer's predecessor, George H. Singley, for a money consideration, by an ordinary grant deed describing the land conveyed by metes and bounds, conveying the fee and not specifying that the land was conveyed for road and ferry purposes. The deed was made in pursuance of the report of a board of appraisers appointed by the board of supervisors in 1879 for the purpose of selecting and appraising land to be acquired for ferry purposes at the place on the river called Singley's Ferry. The report of the appraisers contained a map or plat showing the location of the land to be acquired, connecting roads, river bank, and other pertinent objects near by. The land itself, as shown on the map, was designated "New Road." It was filed and recorded in 1880.

Singley had been licensed by the board of supervisors to operate Singley's Ferry November 5, 1879. In December, 1880, Singley petitioned the supervisors to be relieved from the obligation of operating the ferry, specifying in his petition the difficulties of operation occasioned by the erratic behavior of the river in shifting its course, throwing up sand-bars, and the like. This petition was granted and no license to operate a ferry at this place existed until a year later. On December 20, 1881, a license was granted to Martin McDonald to operate a ferry at Singley's Ferry.

Defendant Van Duzer, who had during the same year acquired the lands of Singley, signed and filed an instrument consenting to the use of his lands and dedicating the same for the purposes of landings for the ferry to be operated by McDonald.

It appears that McDonald, in whole or in part, used McDonald Lane as an approach to the ferry landing instead of the Singley Road, the land here involved. McDonald Lane was also involved in this action, but as to it the defendants filed a disclaimer. The Singley Road fell into disuse as a result of the ferry's changing its landing places from time to time. The defendant Van Duzer eventually took possession of the arable portion of the land which had been deeded to the county by Singley, and he and his tenants have been cultivating and farming it for upward of thirty years.

Appellants claim title to a part of the land by adverse possession. It is recognized that land dedicated to public use cannot be acquired by adverse possession, but it is claimed that this land was never impressed with a trust for public use. [1] It is pointed out that the deed itself did not dedicate the land for road or ferry purposes, and it is contended that the finding of the court that the land had been accepted and used as a public road and ferry crossing is not supported by the evidence.

The findings, following the testimony, show that the river has undergone many changes, annually moving and shifting about, throwing up sand-bars, so that there was a constant struggle between the ferrymen and the river. The ferry had to move up or down the river for deep water and suitable landings as the river in its whim changed deep water to sand-bar or river bank and back again. The testimony of witnesses who had seen the ferry operated in 1880 was heard at the trial. The face of the ground had changed so much in thirty years that these witnesses were not able with great exactness to designate the precise boundaries or location of the river approach used by the public in 1879, 1880, and thereabouts. Appellants claim that the testimony shows the land so used was at one side of and not within the boundaries of the land in suit. The surveys and testimony are both conflicting on this point. However, before the trial commenced the boundaries of the disputed land had

been marked out by rows of white flags by a surveyor and several witnesses testified that these flags marked the river approach used by the public in 1880 and other dates specified.

The findings of the trial court upon this conflicting evidence are sufficiently supported by the testimony. The public use of the road, together with the map of the appraisers referred to which designated the land "New Road," followed by the deed of conveyance to the county, constituted a dedication to public use of the land conveyed.

Whether the ferry be a highway or not, the ferry crossing was a public use, and it is of no great consequence to this case whether the land was dedicated to one public use or another. We see no application in the argument of appellant that a ferry is not a highway. The land, originally bisected by the river, is now all dry land, owing to the fact that the river has moved south. In this process of moving, whatever land involved was used strictly for ferry purposes as distinguished from a public road to and from the ferry landings became a part of the road proper. [2] The law of accretion would apply to the county's property as well as to the defendant's.

Appellants contend that if it is held that this land was once dedicated or impressed with a public use, nevertheless this public use was abandoned by the county; that after abandonment of the public use the land was thereafter held by the county in its proprietary capacity as distinguished from its governmental capacity, and that thereupon the land, no longer being held for a public use, was subject to acquisition by adverse possession. It is claimed that the release of Singley as ferryman, the changes in the river course, and the location of the ferry, the fact that there is now no water touching the land upon which a ferry could be floated, the establishment of other approaches and the recent construction of a concrete bridge across the river, constitutes such an abandonment of the public use of the land.

It is not to be doubted that land held for a public use cannot be acquired by adverse possession. This is established in this state by a long line of authorities. These authorities are cited and reviewed in *People* v. *Kerber,* 152 Cal. 735, [93 Pac. 878], and *Patton* v. *Los Angeles,* 169 Cal. 531, 147 Pac. 141]. But it has been held that property held

by a city or county in its proprietary capacity is subject to acquisition by adverse possession. (*Ames* v. *San Diego,* 101 Cal. 390, [35 Pac. 1005].) Furthermore, it has been intimated that property held for a public use may be converted into proprietary property by an abandonment of the public use by the public authorities, and thereafter become the subject of acquisition by adverse possession. (*People* v. *Kerber, supra; Patton* v. *Los Angeles, supra.*)

We have been referred to no case where a street or highway once dedicated by formal act or conveyance has been held to have been abandoned by implication. We do not regard *People* v. *Goodin,* 136 Cal. 455, [69 Pac. 85], as so holding. The case of *Myers* v. *Daubenbiss,* 84 Cal. 1, [23 Pac. 1027], deals with section 2620, Political Code, before it was repealed in 1883. In *McRose* v. *Bottyer,* 81 Cal. 122, [22 Pac. 393], Political Code, section 2631, and Civil Code, section 806 and section 811, subdivision 4, were construed together to the effect that a servitude acquired by user was extinguished by nonuser, but this, by express limitation of section 811 of the Civil Code, has no application to a grant as in the case at bar.

[3] On the contrary, many authorities hold that property once dedicated, set apart, or held for a public use cannot be acquired by a private owner by adverse possession, even while its public use may be discontinued. (*Archer* v. *Salinas City,* 93 Cal. 51, [16 L. R. A. 145, 28 Pac. 839]; *County of Yolo* v. *Barney,* 79 Cal. 375, [12 Am. St. Rep. 152, 21 Pac. 833]; *San Francisco* v. *Sharp,* 125 Cal. 534, [58 Pac. 173]; *People* v. *Myring,* 144 Cal. 351, [77 Pac. 975]; *Wheeler* v. *City of Oakland,* 35 Cal. App. 671, [170 Pac. 864]; *Visalia* v. *Jacob,* 65 Cal. 435, [52 Am. Rep. 303, 4 Pac. 433]; *London etc. Bank* v. *Oakland,* 86 Fed. 30; Id., 90 Fed. 701, [33 C. C. A. 237]; *San Leandro* v. *Le Breton,* 72 Cal. 171, [13 Pac. 405].)

[4] To effect an abandonment of an easement or public use of property acquired by grant to the public authorities, the intention to abandon must be clearly manifest. Mere nonuser of an easement acquired by grant does not amount to an abandonment. (*Hayford* v. *Spokesfield,* 100 Mass. 491; *Smith* v. *Worn,* 93 Cal. 206, [28 Pac. 944]; *Gardner* v. *San Gabriel Valley Bank,* 7 Cal. App. 106, [93 Pac. 900].)

If mere nonuser shall be held to be an abandonment of a public highway or street, every encroachment or nuisance on the public highway would effect an abandonment to the extent of the encroachment. The negligence of the public authorities in not removing the encroachment or obstruction would then be a legal substitute for the formal action or proceeding of abandonment provided by law. In that case the possessor by thus separating the public use from the fee could, by a system of "divide and destroy," acquire title by adverse possession in face of the long line of well-established authority to the contrary. Some of these decisions involve facts showing a period of nonuser for as long a period as in the case at bar.

[5]   In this case there was no formal abandonment and no action of the public authorities clearly showing an intention to abandon the public highway. The action of the board of supervisors in releasing Singley from the obligation of operating a ferry at Singley's Ferry, and a year later granting a license to McDonald to operate a ferry at Singley's Ferry was a change of ferrymen only. This action did not affect the highway. That McDonald operated the ferry in whole or in part between new lands, and used different approaches to the landings, and that other roads and approaches were used to ferry and ford across the river, does not affect the land in question by showing any action on the part of the public authorities indicating an intention to abandon the road. These subsequent events are merely evidence of the subsequent nonuser of the land in question by the public as a highway.

In view of the foregoing considerations the findings of the trial court against abandonment of the public use of the land must be sustained. The findings are very full on this point, and from these it is further made to appear that the land in question may again be found necessary as an approach to the river crossing; that although the river channel is at present far removed from its old channel, it has recently shown indications of returning to the old river channel, which would leave the present concrete bridge entirely on one side of the stream. This fact, of course, by itself does not indicate the intention of the public authorities thirty years ago, but it emphasizes the peculiar feature of this case, the changeableness of the river, and indicates that

the nonuser, though long in point of time, was temporary in character. In such case abandonment is not inferred. (*Lake View* v. *Le Bahn*, 120 Ill. 92, [9 N. E. 269]; *McAlpine* v. *Chicago etc. Ry.*, 68 Kan. 207, [1 Ann. Cas. 452, 64 L. R. A. 85, 75 Pac. 73].)

[6] Appellants finally claim that the plaintiff is estopped from asserting title by allowing them to clear and cultivate the land. But the trial court found against this contention, holding that the appellants had profited by the use of the land in excess of the expenditure made in clearing it. Likewise the proof did not show the payment of taxes on the land by appellants, the tax bill description excepting lands sold, which under the facts excluded the land in question. Moreover, these things do not raise an estoppel. (*San Leandro* v. *Le Breton*, 72 Cal. 171, [13 Pac. 405]; *Sacramento* v. *Clunie*, 120 Cal. 29, [52 Pac. 44].)

The judgment appealed from is, therefore, affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 23, 1920.

Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.