[Civ. No. 3350.   Third Appellate District.—December 28, 1927.]

JULIUS   HANSEN,   Appellant,   v.   EDWARD   ROGERS
et al., Respondents.

Everts, Ewing, Wild & Everts for Appellant.

Loren A. Butts, Carling & Cummings and H. J. Carling for Respondents.

WEYAND, J., *pro tem.*—On August 1, 1881, one Thomas E. Hughes filed with the county recorder of Fresno County a subdivision map of some 2,880 acres of land adjacent to and immediately south of the city of Fresno, California. This subdivision was by Hughes denominated "Fresno Colony," and it divided this large tract into 144 lots of approximately 20 acres each.   The Southern Pacific Railroad

ran northwesterly through a part of this tract. Easterly and westerly through a portion of this tract there was platted a street, named "Church Avenue." This street extended from the said railroad westerly to a street Hughes had by said map designated as "Cherry Avenue," and which last-named street was distant approximately one-half a mile from a point where said railroad intersected "Church Avenue." Lots 21, 22, 23, and 24 of said "Fresno Colony" were by the said Hughes map shown to border on the north side of "Church Avenue," and lot 21 bordered on the east line of said "Cherry Avenue." These streets are by said map designated as sixty-foot streets.

On February 7, 1888, one J. E. Hughes filed with the same officer a map or plat whereby "all that portion of Lots 21, 22, 23 and 24 'Fresno Colony' lying westerly of Central Pacific R. R." were entirely replatted as town lots; said map being called "Belgravia Addition to the City of Fresno." Along the south side of the said "Belgravia Addition" there is delineated a street called "Church Avenue," and along the west side thereof there is a street named "Cherry Avenue."

On May 3, 1909, there was filed a third map whereby "Belgravia Addition" was replatted in part only, adopting substantially all the streets on the "Belgravia Addition," including "Church Avenue" and "Cherry Avenue." This map was filed by Edward Rogers, as attorney-in-fact of Ellie Hill Rogers. On its face it is called a "re-subdivision of Belgravia Addition to the City of Fresno, which comprises all that portion of Lots 21, 22, 23 and 24 of 'Fresno Colony' lying west of the Southern Pacific Railroad," but it is renamed "Map of South Fresno Addition." This last map was duly acknowledged by Edward Rogers, as attorney-in-fact of Ellie Hill Rogers, and has appended the certificate of the surveyor who made the survey, the county auditor of Fresno County, and the acceptance by the board of supervisors of Fresno County. This map shows a series of town lots, designated by number of lot and block, along its entire south line for this distance of approximately one-half a mile, and as bordering on "Church Avenue."

There is no contention herein as to the right of the several parties above named to file the several maps or plats.

From surveys recently made it now develops that an error was made in the original surveys and that "Church Avenue" is actually some twenty-two feet wider than the so-called sixty-foot "Church Avenue" of the "Fresno Colony" map filed in 1881 by Thomas E. Hughes. All of the property in question is now within the corporate limits of the city of Fresno.

Over thirty years ago a drainage canal or ditch was constructed along and over the northerly side of "Church Avenue," which construction was prior to the filing of the "South Fresno Addition" map. This ditch was abandoned and large sections thereof were filled in at various times.

Prior to the filing of this suit one B. Williams became the owner of lot 29 of block 5, which lot bordered on "Church Avenue," and which lot also faced easterly on the state highway, which road had been by the "Belgravia Addition" and the "South Fresno Addition" maps laid out along the easterly side of the tracts replatted. This lot was conveyed to Williams "according to" the South Fresno Addition map. Subsequent to the acquisition by Williams his rights were by a foreclosure sale vested in one Stilios Tripolitis. The commissioner's deed conveyed the property to Tripolitis according to the same "South Fresno Addition" map. This deed is based on a judgment dated June 9, 1923.

The appellant herein, as plaintiff, on September 19, 1925, began an action to quiet title to a strip of land which in said plaintiff's complaint is described as follows:

"That portion of the south-east quarter of the north-east quarter of Section 15, Township 14 South, Range 20 East, described as follows, to-wit:

"Beginning at the most Easterly corner of Lot Twenty-nine (29) in Block Five (5) of South Fresno Addition, as shown on map thereof recorded May 3, 1909, (this is the South Fresno Addition map) in Book 4, page 58, of Record of Surveys, in the office of the County Recorder of said County (County of Fresno, etc.); thence southeasterly along the Westerly line of Railroad Avenue, as shown on said Map, twenty-two (22) feet; thence Westerly along the Northerly line of Church Avenue, as shown on map of Fresno Colony, recorded August 1, 1881, in Book 2, page 8

of Plats, to the Southerly extension of the Northeasterly line of the alley traversing Block 5 of said South Fresno Addition; thence North-westerly along the extension of said North-easterly line of said alley, 22 feet more or less to the junction of said North-easterly line with the South line of Lots 28 and 29 in said Block 5; thence East along said South line 171 feet more or less to the point of beginning."

This action is brought against the said Edward Rogers, and all unknown owners, under the twenty-year statute.

The city of Fresno by its proper officers appeared as a defendant, and claims that the land in suit was at all times since the original platting by Hughes and now is a part of what was named "Church Avenue." Stilios Tripolitis also appeared and contended that he was the owner of the parcel of land described in plaintiff's complaint.

Upon the trial judgment was rendered for the city of Fresno. The plaintiff moved for a new trial upon alleged insufficiency of the evidence to justify the decision, and that the decision is against law, and also for alleged errors occurring at the trial. This motion was denied. This appeal is from the judgment of the trial court.

Plaintiff introduced in evidence the three maps or plats hereinabove referred to. To show his chain of title plaintiff introduced in evidence several deeds from one by Thos. E. Hughes in the year 1883 down to the present time. These deeds, with two exceptions hereafter noted, conveyed this property by reference to one or the other of the three maps introduced in evidence. In other words, no deed, with the exception of the two above alluded to, conveyed except by reference to maps which showed a "Church Avenue" bordering on the south side of the lands described in said deeds. The two exceptions above mentioned are as follows: On October 4, 1924, less than a year before this action was instituted, B. Williams and Amy Williams, his wife, conveyed to plaintiff a tract of land identical with the description in his complaint. On October 14, 1925, after this action was instituted, Edward Rogers and Ellie Hill Rogers, his wife, conveyed to plaintiff the same tract of land.

Plaintiff during the trial admitted as a fact that Tripolitis was the owner of the lot he claimed by his answer, to wit, lot 29 of block 5 of the "South Fresno Addition," and plaintiff also specifically admitted that his title, if any he had, came through the defendant Edward Rogers.

The defendant Edward Rogers testified by deposition that when he laid out "South Fresno Addition" he made no claim to the property covered by the ditch.

Williams testified that he first had an option from defendant Rogers for the purchase of "an acre on the corner," adjoining "Church Avenue" and the highway that had been laid out parallel to the railroad. That when he closed his option with Rogers he was given "lots" on the corner to make up an acre in area. These lots he accepted by a deed naming lots 25, 26, 27, 28, and 29 of block 5 of "South Fresno Addition." He testified that he supposed his deed included the land described in plaintiff's complaint. Williams further testified that he took possession of the land plaintiff now claims, and fenced the same and used it. He also stated that he filled in the part of the unused ditch in the tract described in plaintiff's complaint. ■ We are at a loss to understand by what method of reasoning plaintiff arrives at the conclusion that he becomes the owner of the land in question. When Thos. E. Hughes filed the map of "Fresno Colony" in the year 1881 he was the owner of the land for at least half a mile on both sides of "Church Avenue." If by some error that particular street was in fact laid down on the map as being 60 feet in width, while on the ground it was actually 22 feet wider, or a width of 82 feet, Hughes became bound by his erroneous map. By this map he placed lots 21, 22, 23, and 24 of his "Fresno Colony" as bordering on "Church Avenue." When he parted with title in 1883, he did so by a deed that made reference to a map that showed that these lots then conveyed were bordering on the north side of his said "Church Avenue." The defendant Rogers is bound by his acts, and the acts of his wife, when they replatted a part of "Fresno Colony" as "South Fresno Addition," in that they replatted lots 21, 22, 23 and 24 of the "Fresno Colony" into town lots, a series of which bordered on "Church Avenue." By this "South Fresno Addition"

map there is for at least a distance of thirty feet to the south of the series of lots a street named "Church Avenue." At the time this last-named map was filed the act of the legislature of the state of California, passed in 1907 (see Statutes of 1907, p. 290), was in force. Section 4 of said statute reads as follows: "The map or plat so made, endorsed and acknowledged shall, if the same offers for dedication any highway, or portion thereof, be presented to the board of supervisors, board of trustees, city council or other governing body having control of public highways in the territory shown on such map or plat and said governing body shall endorse thereon which of the public highways offered by said map or plat they accept on behalf of the public, and thereupon such highways as have been so accepted, and no others, shall be and become dedicated to the public use."

The board of supervisors of Fresno County accepted "on behalf of the public and for public use, all the Avenues, Roads and Highways offered by the accompanying map of South Fresno Addition." When Rogers sold to Williams he did so according to his map, which showed lot 29 of block 5 as bordering on said last-named street.

The board of supervisors of Fresno County having accepted his offer to dedicate any lands to the immediate south of his platted lots, as "Church Street" now precludes him from laying claim to property to the south of his platted lots, as being unplatted private property.

We then have the question as to whether or not Williams could go upon a public dedicated street, and by taking possession of the same and fencing the same, thus acquire title thereto. The making of the Hughes map in 1881 constituted an abandonment by Hughes to the public of whatever land was actually within the limits of what he chose to call "Church Avenue." Hughes was not permitted to say in effect that he made a mistake and actually left a street 82 feet in width, and therefore he could reclaim a twenty-two foot strip along the south side of lots he had sold as bordering on said "Church Avenue." Much less can defendant Rogers, or those acting under him, do so. Rogers did not own the land south of "Church Avenue" as did Hughes. Rogers accepted a deed of a tract that bordered on "Church Avenue," all of which he subdivided into lots.

We think the case of *Humboldt County* v. *Van Duzer*, 48 Cal. App. 640 [192 Pac. 192], fully answers this contention here. The judgment of the lower court was correct.

The judgment is affirmed.

Finch, P. J., and Hart, J., concurred.