[No. 14035.   Department One. — August 17, 1891.]

HOWARD W. MILLS, APPELLANT, v. THE CITY OF LOS ANGELES, RESPONDENT.

PUEBLO LAND — POSSESSION — EVIDENCE OF TITLE — PATENT TO CITY — STATUTE OF LIMITATIONS. — Possession is sufficient evidence of title to pueblo land as against a mere trespasser without right; but it is of no value as against a patent to the city, unless it constitutes a bar under the statute of limitations which does not begin to run until the patent is issued.

ID. — UNOPENED STREET — ESTOPPEL OF CITY — RECOGNITION OF POSSESSION. — A city which has obtained a patent to pueblo land is not estopped from denying the title of a mere possessor of land across the line of an unopened street because prior to the patent it made a map recognizing the fact of such possession, and purchased part of the street from an adjoining possessor whose deed bounded the granted land by the land of the remaining possessor, and afterwards collected taxes upon the land; nor does such recognition of the possession confer title upon the possessor.

ID. — DEED FROM CITY — BOUNDARY UPON STREET — PRESUMPTION — OFFICIAL MAP. — Where the possessor of land lying across an unopened street, at the junction of two streets as marked upon the official map of the city, petitioned for an exchange of the land in the street intended to be opened for the same quantity on the other side of his lot, and accepted a deed which described the land as beginning at the corner of the two streets, and bounded it on the street which it crossed, such deed is no evidence of title to any part of the street; but it must be presumed, in the absence of counter-proof, that the point called for is the corner of the streets as fixed on the official map.

ID — PATENT — BENEFICIAL OWNERSHIP — GRANT FROM PUEBLO. — In order that the possessor of public land may have the confirmation and patent of the lands inure to his benefit, he must show a grant from the pueblo or city.

ID. — DEDICATION OF STREET BY PUBELO — OFFICIAL MAP — ACCEPTANCE — USER. — A pueblo had political authority to lay out, dedicate, and accept streets within its limits, and might dedicate them by designating them as such upon its official map, and no acceptance by the public by using the proposed streets was necessary to complete the dedication.

ID. — POSSESSION BY TRESPASSER. — The possession of a proposed public street by a trespasser not in privity with the pueblo does not affect the dedication of the street, if it is laid out as such on the official map of the pueblo.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Graves, O'Melveny & Shankland,* and *Chapman & Hendrick,* for Appellant.

The city of Los Angeles was not the owner of the property at the time the Ord map was approved. The appellant and his grantors were in possession at that time, and had been for seven years, and the Ord map itself shows that the entire width of the proposed street was occupied. Possession is of itself *prima facie* evidence of title. (*Kelly* v. *Mack,* 49 Cal. 524.) Independently of the appellant's title, the city had no title at the time of the approval of the Ord survey, and therefore could not make a dedication of the property. Although the city had a qualified interest as the successor of the Spanish pueblo, it was not the owner in fee. (*People* v. *Holladay,* 68 Cal. 443.) As it appears from the admitted facts in the case that there was an uninterrupted occupation and inclosure of the premises for forty-five consecutive years by appellant and his grantors, the burden of the proof in establishing a dedication was on the respondent. (*Tate* v. *Sacramento,* 50 Cal. 242.) As to the degree of proof required, it must be by such acts as indi-

cate a clear, unequivocal, and deliberative intention to dedicate. The intent to dedicate must be clearly and explicitly manifested. (*People* v. *Blake*, 60 Cal. 497.) Acts of dedication must be clear, conclusive, and free from doubt or ambiguity. (*Harding* v. *Jasper*, 14 Cal. 649, and cases cited.) The proof of intent to dedicate must be so cogent, persuasive, and full as to leave no reasonable doubt of the existence of the owner's intent and consent. (*Spaulding* v. *Bradley*, 79 Cal. 449; *Quinn* v. *Anderson*, 70 Cal. 454; Bigelow on Estoppel, sec. 142; Dillon on Municipal Corporations, sec. 499; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; *Hayward* v. *Manzer*, 70 Cal. 476; *People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22.) The making and filing of a map, designating certain streets thereon, is only an offer to dedicate such streets to the public, and the dedication does not become effectual and irrevocable until the same is accepted by the public. (*People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22; citing *Hayward* v. *Manzer*, 70 Cal. 476; *Harding* v. *Jasper*, 14 Cal. 649; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; *San Francisco* v. *Canavan*, 42 Cal. 552; *People* v. *Williams*, 64 Cal. 502; also *Phillips* v. *Day*, 82 Cal. 24.) If it be admitted that the city had such a title at the time of the approval of the Ord survey as that it could make a dedication, none such was made, so that the city could not transfer the title to another party, because the public had never accepted the dedication. (*San Francisco* v. *Calderwood*, 31 Cal. 588; 91 Am. Dec. 542; *San Francisco* v. *Canavan*, 42 Cal. 552; *Spaulding* v. *Bradley*, 79 Cal. 454.) Before the time of the offer of dedication is accepted by the public, the owner may withdraw the same. (See *People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22; *Phillips* v. *Day*, 82 Cal. 24.) The conveyance of the property to Anderson was the withdrawal of this offer, if any was ever made, and up to that time, at least, it had never been accepted. The buildings were still there, and the prop-

erty had never been used by the public. (*Phillips* v.
*Day*, 82 Cal. 24.)

*C. McFarland*, for Respondent.

The intention of the owner to dedicate his land is to
be gathered from his conduct, considered in connection
with surrounding circumstances, rather than from what
he subsequently testifies his intention was. (*Morgan*
v. *Railroad Co.*, 96 U. S. 716; *City of Indianapolis* v.
*Kingsbury*, 101 Ind. 200; 51 Am. Rep. 749.) Where
lots are sold as fronting on or bounded by a certain
space designated in the conveyance as a street, the use
of such space as a street passes as appurtenant to the
grant, and vests in the grantee, in common with the pub-
lic, the right of way over the same. (*Kittle* v. *Pfeiffer*,
22 Cal. 485; *Stone* v. *Brooks*, 35 Cal. 489.) The public
have a right, as well as individuals, to rely upon the con-
duct of the owner as indicative of his intent. If the
acts are such as would fairly and reasonably lead an
ordinarily prudent man to infer an intent to dedicate,
and they are so received and acted upon by the public,
the owner cannot, after acceptance by the public, recall
the appropriation. (Elliott on Roads and Streets, 92, 93,
98, and authorities cited.) Where highways are dedi-
cated which are beneficial to the public, an acceptance
will be implied. (Elliott on Roads and Streets, 115.) Im-
proving a road is acceptance. (*Cincinnati etc. R'y Co.*
v. *Village of Carthage*, 36 Ohio St. 631; Elliott on Roads
and Streets, 116, and authorities cited.) The dedica-
tion was complete without any acceptance. (*Hoadley*
v. *San Francisco*, 50 Cal. 265; *San Francisco* v. *Sullivan*,
50 Cal. 605; *Sawyer* v. *San Francisco*, 50 Cal. 375; *People*
v. *Pope*, 53 Cal. 451; *Visalia* v. *Jacob*, 65 Cal. 436; 52
Am. Rep. 303; *County of Yolo* v. *Barney*, 79 Cal. 375.)
No formal acceptance of an offer of dedication is neces-
sary. (*Stone* v. *Brooks*, 35 Cal. 489.) Where a corpora-
tion has laid out streets, squares, and alleys, it will be

held to have dedicated them. (*Story* v. *N. Y. etc. R. R. Co.*, 90 N. Y. 122; 43 Am. Rep. 146.) The street, having been dedicated, cannot be sold by the city council. (*Hoadley* v. *San Francisco*, 50 Cal. 265.) Title cannot be obtained to a street by adverse possession. (*People* v. *Pope*, 53 Cal. 437; *Hoadley* v. *San Francisco*, 50 Cal. 265; *Bolger* v. *Foss*, 65 Cal. 250; *City of Eureka* v. *Armstrong*, 83 Cal. 623.)

TEMPLE, C. — Plaintiff appeals from the judgment and order refusing a new trial.

The action is to quiet title to a strip of land in Los Angeles sixteen feet wide, extending westerly from Main Street, along Second Street, and constituting a portion of Second Street as now laid out and used.

The answer denies the title of plaintiff, avers title in defendant, and dedication of the land as a public street.

It is admitted that Los Angeles was a Mexican pueblo, and continued to be such until its organization under the laws of the state in 1850, and that the land was a portion of the pueblo lands.

In 1842, Tomas Urquidez took possession of a tract of land which included the land in controversy, and erected an adobe building which extended entirely across what is now Second Street, near the junction of Main and Second; and the strip claimed by plaintiff, who derives title from Urquidez, was continuously inclosed and occupied up to 1887.

A patent was issued to the city of Los Angeles for the pueblo lands in 1875, and another in 1876. Plaintiff shows no grant for the lands from the pueblo or the city, or any other source except from Urquidez, and those who succeeded him as grantees. But he claims that possession is evidence of title. Possession is sufficient evidence of title as against a mere trespasser without right, but is of no value as against the patent to the city, unless it constitutes a bar under the statute of limitations.

It seems immaterial to this inquiry whether prior to the patent the pueblo had an inchoate title to the lands, or only a limited authority within defined limits over public lands which had been assigned for the use of the public. By the patent, all the lands included in it passed to the city, except such as were held under grant from the pueblo or city, or under grant from Mexican authorities. Under the stipulation, *prima facie*, the title is in the city, and the plaintiff who seeks a judgment, adjudging him to be the owner, must show by competent proofs title in himself. He has not attempted to show, and does not claim to have, a title from Mexico. Has ·he, then, acquired title from the pueblo or city, or by adverse holding barred her right?

It may be assumed that the statute did not begin to run against the city until the patent was issued in 1875. There is no evidence of an approved survey of the pueblo lands under the act of Congress of June 14, 1860.

Plaintiff claims that the city has recognized his right, and although his briefs do not make it very clear in what way such recognition can confer title, he seems to argue that in some way the city is estopped from denying his title, or the acts referred to raise the presumption of a grant from the city or pueblo. Where there is a question as to whether one holds in subordination to another or whether he holds adversely, the fact that the title has been recognized is important; but, evidently, mere recognition cannot confer title. There must be something in the nature of an estoppel.

In 1849, the pueblo adopted a map and survey as official. On this map, Second Street appears as now located and used. But at the intersection of Second and Main streets it shows Second Street was occupied by the buildings of plaintiff's predecessor; in other words, that it was not an opened street, and could not be until the buildings were removed. Occupants of the land, claiming

under Urquidez, have had the land assessed to them, and the city has collected the taxes upon it.

In 1855, one Dryden, claimant of a portion of the property, sold a portion of Second Street to the city, which paid him one thousand dollars therefor, and took his deed. Dryden's deed covered the balance of the street adjoining plaintiff's claim, and the calls of the deed bound it upon Anderson's land. Plaintiff derives title from Anderson.

In 1872, the council referred the matter of the obstruction in Second Street to a committee, which reported that Anderson stood upon his rights.

In 1884, the council passed an ordinance directing proceedings for the condemnation of this strip; and in 1885, another in reference to compensation for the strip.

In all this we see nothing that can estop the city, or tends to raise a presumption of a grant, and the latter is completely disproved by the fact that Anderson petitioned the council for a grant to this and other land on the Urquidez tract. There is no evidence that any claimant under Urquidez ever pretended that there was a grant from the city or the pueblo to Urquidez. So far as the record shows, all disclaimed such grant, and asked for and received, after the controversy arose, deeds from the city.

But the plaintiff claims that the strip is included in a deed from the city to Anderson, upon his petition dated August 6, 1855. He petitioned for the land fronting eighteen yards on Main Street. Previously, February 17, 1855, he had presented a petition showing that he had purchased property which extended five feet " in a street that is intended to be opened as soon as required. I therefore wish to exchange that same quantity of land for the same quantity on the other side of my lot," etc.

The petition of August 6th for a deed was referred to a committee, which reported in favor of granting it on condition that Second Street be made his southern boun-

dary, and the council ordered "that title be given to the petitioner on the conditions mentioned in the report." The mayor's report shows that a deed was given to Anderson which described the land as beginning at the corner of Main and Second streets.

The deed itself was offered in evidence, and excluded on the objection of defendant. This ruling is assigned as error. The offered deed also described the land as bounded on Second Street, which it says constitutes the southern boundary. If the plaintiff, in connection with the offer of the deed, proposed to show that it included the land, — and he claims that is shown, — the deed should have been admitted, and then a finding founded upon proper and legal evidence would have been conclusive here. But now, if we can see that the deed, if admitted, would have been of no advantage to appellant, it is not prejudicial error.

As the land granted is bounded upon the line of Second Street, and the description commences with the call for the corner of Second and Main streets, it would seem that the deed does, by express language, exclude the land in controversy; and this, no doubt, is the reason why the court ruled it out. But it is contended that the corner of Second and Main streets, and the call for Second Street as the southern boundary of the land conveyed to Anderson, refers to that street as opened by the purchase from Dryden which is bounded upon the land of Anderson. The Dryden purchase was for sixty-six feet of Second Street, and plaintiff contends that when Anderson asked to exchange five feet in the street for five feet on the other side of his lot, he was claiming five feet of the ground conveyed by Dryden, and by that conveyance made a part of Second Street.

But this reasoning seems forced and far-fetched. We have not been able to find in the record any evidence that Second Street was then opened to the public. The deed from Dryden to the city bears date August 15,

1855. It appears that he was not to give possession for two months after the conveyance. Anderson's petition in which he offers to exchange bears date February 17, 1855, nearly six months prior to the conveyance. He must, therefore, have referred to the street as marked out on the official map.

Anderson's petition for a deed is dated August 6, 1855, and the order allowing him a deed on condition that he accept it with the boundary on Second Street was made August 30, 1855. The city had not then taken possession. Anderson filed still another petition, September 18, 1855, which also shows that the street had not yet been opened. And then the fact that Anderson's petition was granted only on condition that he would accept it with the boundary on Second Street shows that they did not give him the land asked for, but required him to give up his claim to the land on Second Street.

But the presumtion would be, that the point called for is the corner of the streets as fixed on the official map, and the circumstances would be required to show very clearly that something different was intended to justify a different conclusion. But the record does not show that Second Street had been opened to use, or was defined in any way save by the official map.

Appellant contends that the confirmation of the title of the city inures to his benefit under section 14 of the act of Congress passed March 3, 1851. But that section is for the benefit of those who but for it could, and to prevent forfeiture must, have presented their claims individually. Neither Urquidez nor any of those claiming under him have shown a claim which could have been so presented. To have the confirmation and patent inure to his benefit, he must show a grant from the pueblo or city.

Plaintiff has not expressly claimed that he acquired title under the statute of limitations, but perhaps that claim is involved in his contention. The Ord map,

made in 1849, being the official map of the city, is evidence that as early as 1849 the premises were declared a public street; that it was occupied by a trespasser would not affect the dedication. Such obstruction would not manifest an intention on the part of the city or pueblo to withhold that part of the street from public use, but only that there was an obstruction to be removed.

There was no necessity for an acceptance by the public by using the proposed street to complete the dedication. The city was not only proprietor, but the political authority to lay out, establish, and to accept streets which were offered to the public by way of dedication. In *Eureka* v. *Armstrong*, 83 Cal. 623, it was said: "The common council is the only body to accept a dedication. If not, who is there that can give formal acceptance?"

The pueblo was, or represented, the proprietor. Its authorities also represented the public, and were authorized to lay out streets. In fact, to accomplish the purpose for which pueblos were formed and lands assigned to them, they must do so. Lots cannot be sold or villages built up without streets. At first, streets would naturally exist only on paper. But they were necessary to designate the lots and the different classes of land belonging to a pueblo. Whether they had been accepted and used by the public, so that they could not have been changed or otherwise disposed of by the municipal authorities, is not material to this inquiry. That question seems to have been considered important in *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; and in *San Francisco* v. *Canavan*, 42 Cal. 555. In the last case it was said: "Until accepted, the dedication, whether made by deed or otherwise, may be revoked by the owner of the land"; and this was applied to a supposed dedication by ordinance of a public park. But it does not follow because the city might revoke the dedication until it had been used, that therefore, before such revocation, it should not be considered as a park.

Of course, no adverse rights could be acquired in this property after it had become a public street.

We think the judgment and order should be affirmed.

FITZGERALD, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.