[L. A. No. 3485.  In Bank.—March 4, 1915.]

## RUTH PATTON et al., Appellants, v. CITY OF LOS ANGELES, Substituted Defendant, Respondent.

TIDE LANDS RESERVED FROM SALE—CITY OF LOS ANGELES AS DEFENDANT —JUDICIAL NOTICE OF ACT OF LEGISLATURE.—In a controversy over tide lands situated within the bay of San Pedro, in which the city of Los Angeles was substituted as a defendant in place of the city of Wilmington, the court will take judicial notice of the act of legislature of May 1, 1911, passed pending the suit, granting to the city of Los Angeles all the right, title, and interest of the state in all the tide and submerged lands within the city's boundaries, as then constituted, in trust for certain enumerated uses and purposes of public navigation and commerce, the lands subject to the controversy being among those so granted, and will consider such city as successor to the state for all the purposes of the suit.

ID.—LANDS WITHHELD FROM SALE—EFFECT OF PATENT—SUBSEQUENT ACCRETIONS.—A patent to tide lands issued during a period when such lands were by law being withheld from sale would be of no effect; and no artificial embankment, made by third persons or made or suffered to be made by state officers or agents, nor any accretion to the adjacent upland caused thereby, could operate to divest the state of its title to the tide land so reserved.

ID.—TIDE LAND WITHIN TWO MILES OF WILMINGTON—DISINCORPORATION OF TOWN—ACCRETIONS CAUSED BY EMBANKMENTS—STATE TITLE NOT DIVESTED IN FAVOR OF OWNER OF UPLANDS.—The fact that there was an interval of nearly a year, being the period between March 12, 1887,

the date of the repeal of the act incorporating Wilmington, and March 1, 1888, the date of the incorporation of the city of San Pedro, during which there was no incorporated city or town within two miles of the tide land in controversy and it was free from the reservation prohibiting its sale, did not have effect to attach to the upland, as part thereof, accretions previously formed by railroad or other embankments thereon, or to divest the state to its title to the tide land with which it had not previously parted. The making of such railroad embankments under license from the state, or accretions caused thereby, could not operate in favor of third persons to divest the state of its title to the land covered by the embankment and accretions extending out over it from the adjacent upland, and transfer the title to the owner of the upland.

ID.—FILLING IN LAND BY CITY OF LOS ANGELES.—The change made by the city of Los Angeles in the character of the land, after its acquisition of the title by filling in the land so as to fit it for navigation and commerce, did not have the effect to transfer it to the owners of the abutting upland.

ID.—RIPARIAN RIGHTS OVER TIDE LANDS ARE SUBJECT TO PUBLIC EASEMENTS.—All rights of riparian owners over the adjacent tide lands are subject to the public easements for the purposes of navigation, and must yield thereto when the latter are asserted by the state or its agencies.

ID.—ADVERSE POSSESSION—PUBLIC RIGHTS NOT DIVESTED.—No character or period of adverse possession can terminate or affect the public easements for purposes of navigation and fishery, and no length of time of maintainance, or number of repetitions, of wrongful encroachments can legalize a public nuisance. Adverse possession of land devoted to public use does not divest the right of the state, or other public body in which the title is vested, to maintain such public use, nor in any manner affect the public right or the public use.

ID.—PUBLIC EASEMENT—ADVERSE POSSESSION—SOIL OR LAND.—Possession under adverse claim of title of tide land devoted to public use is wholly ineffectual, not only upon the public right or easement, but also upon the title to the soil or land, including the public easement and every subordinate estate, as well. Per Shaw, J., Sloss, J. concurring. Angellotti, C. J., concurred in the judgment on the ground that the evidence failed to show any actual possession of the tide land in controversy, and that the question as to the acquisition of title by adverse possession was governed by the case of *Wheatly* v. *San Pedro etc. R. R. Co.,* ante, p. 505; Henshaw, J., Melvin, J., and Lorigan, J., concurred in the judgment on the ground that if the asserted occupancy of the appellants was constructive merely, no prescriptive title could be acquired, or if actual and visable and not under license or grant from the state, it was a mere purpresture, subject to abatement at any time at the will of the state.

ID.—SUBORDINATE ESTATE—ADVERSE POSSESSION.—There is nothing in the law of California from which it can be reasonably inferred that the state intends that adverse possession shall operate against the subordinate estate in cases in which it is inoperative upon the public use.

ID.—SERVIENT ESTATE—ADVERSE POSSESSION.—Where under the law the hostile possession cannot operate upon the easement for the enjoyment of which the surface is necessary, and where no notice of any claim to the servient estate is brought home to the owner thereof, such possession could not affect or divest such servient estate.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Smith, Miller & Phelps, for Appellants.

John W. Shenk, City Attorney, Anderson & Anderson, and Leslie R. Hewitt, for Respondent.

SHAW, J.—The plaintiffs have appealed from the judgment.

The city of Los Angeles was not named as a defendant in the complaint. It was, however, substituted as defendant instead of the city of Wilmington. Thereupon the action was dismissed as to all the other defendants. The action proceeded as an action between the plaintiffs and the city of Los Angeles as the sole defendant, the city filed an answer, and upon these pleadings the trial took place.

The complaint states a cause of action to quiet title to a tract of land, a part of which lies within the bay of San Pedro, containing about seven acres, and incidentally to enjoin the defendants from removing the soil therefrom and from depositing soil thereon, and for damages. The pleading of the city of Los Angeles denies the plaintiffs' title and the alleged trespasses and damages. It further alleges that the part of the land described in the complaint which lies south of the southern boundary line of the San Pedro or Dominguez Ranch is tide land and is covered by the ordinary tides of the bay of San Pedro. Thereupon it asks judgment that the plaintiffs have no right or title in or to said tide land.

The findings state that the plaintiffs are the owners of the part of the tract lying north of the San Pedro Ranch boundary and that the city of Los Angeles is the owner of the part lying south of said line, that is, of the tide lands, and is entitled to the possession thereof, and further that said land has been reserved, for purposes of navigation, by the United States government. Judgment was given that the plaintiffs are the owners of the said upland parcel and that the city of Los Angeles is the owner of the parcel of tide land, in trust for the uses set forth in the act of the legislature granting said lands to the said city.

In explanation of what would otherwise seem to be a finding outside of the issues, it is to be observed that after the filing of the answer and before the trial, the legislature passed the act of May 1, 1911, granting to the city of Los Angeles all the right, title, and interest of the state in all the tide and submerged lands within the city boundaries, as then constituted, which included the tide land in controversy here, in trust for certain enumerated uses and purposes which may be described in general terms as the uses and purposes of public navigation and commerce. (Stats. 1911, p. 1256.) At the time of the trial, therefore, the city of Los Angeles had succeeded to the title of the state. The case is to be considered as a controversy between the plaintiffs and the city of Los Angeles as the successor of the state. As this was shown as matter of law, of which the court will take judicial notice, and as there seems to have been no objection made in the court below to the substitution of the city of Los Angeles for the city of Wilmington, or to the filing of the answer by the former, or to the sufficiency thereof, or to the making of the finding of title in the former, provided it is supported by the law and the evidence, the irregularity of the proceedings may be disregarded. The trial manifestly proceeded upon the theory that the title of the defendant, under the aforesaid statute, and the title previously held by the state as well, was in issue.

The first point urged is that the land south of the boundary of the San Pedro or Dominguez grant is not tide land. If it is tide land, then, under the decisions in *People* v. *California Fish Co.*, 166 Cal. 576, [138 Pac. 79], and the companion cases decided at the same time, it was withheld from sale at the time the predecessors in interest of the plaintiffs

claim to have purchased it from the state and the patents and purchases made by them from the state officers are void. In so far as it proves to be tide land, a secondary question is presented,—namely, the claim of the plaintiffs that they have acquired title thereto from the state by prescription. The appellants also claim littoral rights as owners of the upland riparian to the navigable water.

It is first contended that a part of the land south of the boundary has ceased to be tide land because of an accretion to the mainland caused by the erection of an embankment leading from the upland by the Southern Pacific Railroad Company along the line of its road leading from the mainland across a part of the bay. Regarding this and other claims of accretions by and additions to the upland, or because of erections and embankments of others, it is sufficient to say that the point assumes that it was once tide land, and that this being so, it was reserved from sale, and was not alienable by any state officer under any law, during the time when the alleged accretions occurred, and, therefore, no artificial embankment, made by third persons, or made or suffered by state officers or agents, nor any accretion to the adjacent upland caused thereby, could operate to divest the state of its title to the tide land so reserved. There was an interval of nearly a year, being the period between March 12, 1887, the date of the repeal of the act incorporating Wilmington, and March 1, 1888, the date of the incorporation of the city of San Pedro, during which there was no incorporated city or town within two miles of this land and it was free from the reservation aforesaid. We do not think this fact could have effect to attach to the upland, as part thereof, the previously formed accretions and embankments, or to divest the state of its title to the tide land with which it had not previously parted. The railroad embankments were made pursuant to a license from the state under the Civil Code. We can see no plausible reason for the contention that the making of such embankments, or accretions caused thereby, would operate in favor of third persons to divest the state of its title to tide lands covered by the embankment and accretions extending out over it from the adjacent upland, and transfer the title to the owner of the upland. The case of *Ledyard* v. *Ten Eyck*, 36 Barb. (N. Y.) 102, cited by appellants in support of the proposition that such embankments or accretions

belong to the owner of the adjacent upland, is really authority to the contrary. That was a controversy between the owner of the upland and the owner of other land in the vicinity. What the court decided was that the possession of the accretions by the owner of the abutting upland could be disputed by no one except the state. In view of the statute under which this railroad embankment was made and the purposes for which it is used, the state cannot have intended to put itself in the position of one who affixes his property to the land of another without an agreement for its removal, and thus to transfer the affixed property to the owner of the land, as provided in section 1013 of the Civil Code. That section can have no application to an accretion thus caused.

The appellants also claim title to a part of the tideland that has been filled in by the city of Los Angeles since its acquisition of the title, in the improvement of the land to fit it for navigation and commerce. The city, under its grant, has no power to deal with the land otherwise. This change in the character of the land could have no effect to transfer it to the owners of the abutting upland. Our conclusion, upon all these points, is that the land south of the ranch boundary still retains its character as tide land.

With regard to the claim of littoral rights, we need only refer to the discussion thereof in *People* v. *Southern Pacific Co.*, 166 Cal. 629, [138 Pac. 103], and in the more recent case of *Henry Dalton & Sons Co.* v. *Oakland*, 168 Cal. 463, [143 Pac. 721], wherein it is held that all rights of riparian owners over the adjacent tide lands are subject to the public easements for the purposes of navigation, and must yield thereto when the latter are asserted by the state or its agencies.

The remaining proposition urged for reversal is that of the claim of the appellants to title by adverse possession. There is evidence that in 1874 the plaintiffs' predecessor in interest took possession of the part of the land north of the ranch boundary, under a deed from Banning & Alexander, purporting to describe and convey the entire tract in controversy, including the tide land, and that said predecessor and the plaintiffs have ever since that date held possession of such upland, claiming title to the entire tract. The claim is that under this deed and possession of the upland, the plaintiffs have for that period had constructive adverse possession of the tide land. If this is correct, and such adverse

possession could lawfully divest the title of the state to the
tide land, the plaintiff would thereby have acquired such
title and the judgment awarding said tide land to the city
would be erroneous.

It is conceded that no character or period of adverse pos-
session could terminate or affect the public easements for pur-
poses of navigation and fishery. It has long been the doctrine
in this state that no length of time of maintenance, or num-
ber of repetitions, of wrongful encroachments can legalize a
public nuisance; that adverse possession of land devoted to
public use does not divest the right of the state, or other
public body corporate in which the title is vested, to maintain
such public use, nor in any manner affect the public right or
the public use. (*People* v. *Kerber*, 152 Cal. 731, [93 Pac.
878], and cases there cited; to which may be added, *Ex parte
Taylor*, 87 Cal. 95, [25 Pac. 258]; *Bowen* v. *Wendt*, 103 Cal.
238, [37 Pac. 149]; *Hoadley* v. *San Francisco*, 70 Cal. 324,
[12 Pac. 125]; *San Francisco* v. *Itsell*, 80 Cal. 59, [22 Pac.
74]; *San Francisco* v. *Straut*, 84 Cal. 125, [24 Pac. 814]; *Peo-
ple* v. *Holladay*, 93 Cal. 245, [27 Am. St. Rep. 186, 29 Pac.
54]; *Hargro* v. *Hodgdon*, 89 Cal. 631, [26 Pac. 1106]; *Board
of Education* v. *Martin*, 92 Cal. 209, [28 Pac. 799].) So far
as the public easements and the right of the state to improve
and control the land for such purposes are concerned, there-
fore, the claim based on adverse possession gives the plaintiffs
no rights whatever.

The theory is advanced that, although the public easements
are not impaired or affected, the adverse possession is effectual
to vest in the possessor the servient estate, the fee subject to
the public easements. The general doctrine is that the title
acquired by complete adverse possession is a title in fee sim-
ple. (*Wright* v. *Carillo*, 22 Cal. 594; *Arrington* v. *Liscom*,
34 Cal. 370; *Cannon* v. *Stockmon*, 36 Cal. 541, [95 Am. Dec.
205].) The suggestion is that, if this be so, the adverse pos-
session will be given effect as far as it can go, and will divest
that part of the estate which the state had power to alienate
without a violation of its duty to protect and improve the
land in furtherance of the public use, the same effect that
this court, in *People* v. *California Fish Co.*, 166 Cal. 576,
[138 Pac. 79], held will be given to sales of unreserved tide
lands under the law for the disposition of swamp and tide

lands, that is, to give the possessor the naked title to the soil without right to interfere with the public easements.

There can be no doubt that this proposition has not heretofore had the approval of this court. The contrary has been often, in effect, adjudged. An examination of the cases above cited and referred to shows that in many of them the decision and judgment was, in effect, a denial of the doctrine.

In *People* v. *Kerber,* 152 Cal. 731, [93 Pac. 878], the plaintiff sued to recover possession of tide lands in San Diego Bay. The defendants denied the plaintiff's ownership and claimed title by prescription. The judgment in favor of the state, covering the entire fee, was affirmed. The defendants had held possession for some fifteen years, claiming title in fee. If this possession had availed to give them title by prescription to the fee, subject to the public easement, the judgment should at least have been modified so as to preserve to them that title. It was a valuable right, for a seawall had been established by the state, which, if built as planned, would have excluded this land from navigation, the public easements over it would have ceased, and the defendants would have thenceforth held the land in fee simple, free from the public right.

In *San Leandro* v. *Le Breton,* 72 Cal. 170, [13 Pac. 405], a judgment declaring that defendants could not, by prescription, become owners of land dedicated as a public square, was affirmed. Under the doctrine claimed, the adverse possession would have given them the fee subject to the public use. If that doctrine had been sanctioned, the judgment should have been reversed or modified.

In *Mills* v. *Los Angeles,* 90 Cal. 522, [27 Pac. 354], an absolute judgment for defendant, notwithstanding the fact that plaintiff had held the land adversely many years, was unconditionally affirmed, thus virtually denying that plaintiff had acquired any title or interest by the adverse possession, though it had continued for more than ten years.

In *Archer* v. *Salinas,* 93 Cal. 47, [16 L. R. A. 145, 28 Pac. 839], the action was to quiet title to land dedicated as a public park. Plaintiff had held adverse possession for more than ten years, but judgment was given for defendant. This judgment was affirmed, with no provision for any subordinate estate in Archer, in effect declaring that he gained no right by the adverse possession.

*Home* v. *San Francisco,* 119 Cal. 534, [51 Pac. 950], was in all respects identical with *Archer* v. *Salinas* on this point, except that the lot had been set apart for a different public use. The cases of *Holladay* v. *San Francisco,* 124 Cal. 352, [57 Pac. 146], and *San Francisco* v. *Sharp,* 125 Cal. 534, [58 Pac. 173], the first involving land dedicated as a park, and the second land dedicated as a hospital lot, are each to the same effect. The adverse claimants were awarded no title whatever, whereas, under this doctrine, they should have been awarded the fee, subject to the public use. These decisions are all, in effect, a denial of the proposition.

In *Yolo County* v. *Barney,* 79 Cal. 378, [12 Am. St. Rep. 152, 21 Pac. 833], the land in controversy had been dedicated to public use for a county hospital. The defendant had been in possession of part of it, under adverse claim of title, for fifteen years. About a year before the suit was begun the county hospital had been removed from the tract, and the actual public use seems to have been then discontinued and abandoned in fact, though the court found that there had been no abandonment of the *right* to the public use. The action was to quiet title and the judgment in favor of the plaintiff, covering the entire fee, was affirmed without qualification.

If we look to the language of the decisions, we find many expressions wholly inconsistent with the theory here advanced. The italics in the subsequent quotations are ours. In *Visalia* v. *Jacob,* 65 Cal. 434, [52 Am. Rep. 303, 4 Pac. 433], the court said: ''The right of possession is held by the corporation for the benefit of the public, and this right cannot be conveyed to any private person. The *lands* so held are effectually withdrawn from commerce while the street continues. . . . As the municipality cannot convey the *title,* or release itself of the trust, private persons are virtually precluded from acquiring it.'' In *Yolo County* v. *Barney,* 79 Cal. 378, [12 Am. St. Rep. 152, 21 Pac. 833], the court said: ''As we understand the decisions of California, they place the non-running of the statute of limitations upon the ground that the public is in the use of the *land,* and that while in such use a trespasser may neither erect a nuisance thereon, nor acquire a right to hold the *land* based upon a supposed grant to the *land* from the owner.'' In *Mills* v. *Los Angeles,* 90 Cal. 522, [27 Pac. 354], the opinion concludes with this statement: ''Of course, *no adverse rights* could be acquired

*in the property* after it had become a public street." In
*Orena* v. *Santa Barbara,* 91 Cal. 631, [28 Pac. 270], is this
language: "If the premises are a part of the public street,
there could be *no adverse possession.* Individuals may intrude
upon or obstruct a public thoroughfare, but the public can-
not be disseized of *such lands,* and such intruder acquires *no
rights.*" In *San Francisco* v. *Bradbury,* 92 Cal. 418, [28 Pac.
805], speaking of land reserved for public use, this is said:
"An individual could not by mere adverse possession acquire
*any title* to such *land,* or invoke the aid of the statute of
limitations as a defense to its recovery." In *Board of Educa-
tion* v. *Martin,* 92 Cal. 209, 217, [28 Pac. 799], on the same
point it is said: "*The lands* so reserved could not thereafter
have been divested by any adverse possession." In *Archer* v.
*Salinas,* 93 Cal. 51, [16 L. R. A. 145, 28 Pac. 839]: "The
*property* dedicated has become *public property,* impressed
with the use for which it was dedicated, and neither can the
public divert it from that use, nor can it be lost by adverse
possession." In *Ames* v. *San Diego,* 101 Cal. 394, [35 Pac.
1006], it is said that land held by a city in trust for a public
use, "cannot be alienated by the city, and the title of the pub-
lic thereto cannot be lost by a posession adverse to the city."
In *Southern Pacific Co.* v. *Hyatt,* 132 Cal. 244, [54 L. R. A.
522, 64 Pac. 274], the court says: "Individuals may intrude
upon or obstruct the public thoroughfare, but cannot acquire
title thereto by prescription." And finally in *People* v. *Ker-
ber,* 152 Cal. 731, 733, [93 Pac. 878, 879], the subject is
treated at length in a case where, as above stated, the subordi-
nate estate was involved and was of immediately prospective
value. Speaking in terms of "tide lands," and not merely
of the public easements therein, the court says: "And when
such tide lands are situated in a navigable bay and constitute
a part of the waterfront thereof, as is the case here, they con-
stitute property devoted to the public use, of which private
persons cannot obtain title by prescription, founded upon
adverse occupancy for the period prescribed by the statute
of limitations." . . . "Property thus held by the state in
trust for public use cannot be gained by adverse possession,
and the statute of limitations does not apply to an action by
the state or its agents to recover such property from one using
it for private purposes not consistent with the public use."
And referring to the abandonment of the public use, after

saying that upon such abandonment the state will hold the land as a proprietor and not as a public agent in charge of a public use, the opinion proceeds: "If an adverse possession can be maintained, or if the statute of limitations can run against the state, in regard to such proprietary property, it will begin from the date when the public use ceased and not before." Further referring to the provisions of the constitution withholding from grant or sale "*all tide .lands* within two miles of any incorporated city or town" fronting on navigable waters, the opinion proceeds to say that such property "cannot without an amendment of the constitution be disposed of by the state in any manner, except in furtherance of the purpose of navigation to which it is dedicated. . . . If the state is without power to dispose of this land for private use at all, its officers and agents must be without power to make a virtual disposition of it by their neglect in permitting private persons to occupy it for a period of ten years, under claim of ownership, and thus giving such persons an opportunity to invoke for their benefit a legislative declaration that such occupancy will bar the state of its title. . . . In this view of the case, it is immaterial whether title by prescription under the code is, or is not, founded upon the presumption that the possession was originally taken under a grant which has been lost in the lapse of time, as was the case at common law, even if it were conceded that the rule that there can be no adverse possession of property devoted to public use did not apply to this land." In considering the effect of these statements, it must be remembered that in order to sustain the judgment of the lower court in that case, it was necessary to establish the proposition that the defendants had not, by their admitted adverse possession, acquired any title, interest, or estate whatever in the land. They asserted title, and if they had shown any interest, it would have been necessary to modify or reverse the judgment. The decision must be deemed to hold that they did not acquire a subordinate estate subject to the public easement, nor any estate of any character.

From this review of the decisions, it is certain that it has hitherto been the opinion of this court, many times reiterated, that possession under adverse claim of title of land devoted to public use at the time, is wholly ineffectual, not only upon the public use or easement, but also upon the title to the soil or

land, including the public easement and every subordinate estate, as well.

Against the force of these decisions the argument seems to be that as in the recent decision in *People* v. *California Fish Co.*, 166 Cal. 576, [138 Pac. 79], we declared that a sale of tide land, in pursuance of the swamp and tide land provisions of the Political Code, while not a disposition of the public easement or a discontinuance of the use for navigation, was nevertheless a valid transfer of the subordinate estate, and since it is well settled that a prescriptive title is a title in fee simple as against all upon whom prescription is effective, we must now hold that prescription runs against the state with respect to the subordinate estate and is sufficient to divest it of title to that interest. We do not think the conclusion is necessary or reasonable. Mainly because of the entire absence of anything in the swamp land laws purporting to deal with the subject of navigation, or to protect, preserve, or provide for it, or to show a design to execute the public trust upon which the state holds tide land in the interest of navigation, we held in that case that such a sale did not affect the public easement. But because the law clearly indicated the intent and purpose to dispose of some estate in the land, we gave it effect upon the subordinate estate only, the title to the soil subject to the public easement. The cases are not analogous or parallel. There is nothing in our law from which it can be reasonably inferred that the state intends that adverse possession shall operate against the subordinate estate in cases in which it is inoperative upon the public use. Such possession is a plain trespass upon the public easement, an easement to the enjoyment of which actual possession is necessary. The proposition requires us to say that a possession which is entirely ineffective against the public right which involves possession, is at the same time silently working upon the servient estate which it does not in any practical manner disturb so long as the public easement exists. This is in direct contravention of the well-established principle that nothing can be taken by implication against the state, that it will not be presumed to have intended to divest itself of its property, unless such intent is expressed in terms or necessarily implied from the words used. (*Oakland* v. *Oakland W. F. Co.*, 118 Cal. 171, [50 Pac. 277]; *Clark v. Los Angeles*, 160 Cal. 39, [116 Pac. 722]; *Helena W. Co.* v. *Helena*, 195

U. S. 392, [49 L. Ed. 245, 25 Sup. Ct. Rep. 40]; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 33, [50 L. Ed. 353, 26 Sup. Ct. Rep. 224].) This principle is more frequently applied to public statutes or express grants, but we see no reason why it does not also apply to acts *in pais* whereby public property may be taken. The conduct of public officers in charge of these lands in failing to dispossess trespassers, clearly is no evidence of an intent of the state to dispose of any interest therein. We regard this argument as wholly insufficient to justify a disregard of the numerous precedents and declarations to the contrary in our decisions.

Moreover, it is not in accord with the reasons upon which the rule that adverse possession does not affect land devoted to public use rests. Upon this point it has been said: "The distinction between public rights and private ones is quite natural. Every man must look to *his* rights; but in the case of public rights, where no individual has a prior right or interest, distinct from his fellows, where he can bring no action for a public nuisance, acquiescence—silence—goes for nothing. No man wishes in such a case to single out himself and to be an actor against his neighbor; what is everyone's concern is no one's concern, and therefore it is, that length of time is no answer to a public prosecution for a public injury." (*Commonwealth* v. *McDonald,* 16 Serg. & R. (Pa.) 394.) True, this was said in a case where the defendant was prosecuted for obstructing a public highway; public right alone was involved; but no distinction between the public easement and the subordinate estate was mentioned. And in civil cases similar reasons are given. In *Almy* v. *Church,* 18 R. I. 187, [26 Atl. 58], the court said that the grounds of the doctrine "are variously stated; as, that an obstruction is a nuisance and no nuisance can ripen into a right; that individuals may reasonably be held to a limited period to enforce their rights against adverse occupants, because they have an interest sufficient to make them vigilant; while in public rights of property, each individual feels but a slight interest and will tolerate a manifest encroachment rather than seek a dispute to set it right; that public policy requires the preservation of public rights and that a municipality cannot by permissive neglect invest an intruder with title to a public highway." The main idea seems to be that a hostile occupancy of land devoted to a public use cannot be

allowed to initiate an effective adverse possession, the reason being that land so used is not ordinarily as well guarded against intruders as proprietary land or land in private ownership. The reason applies to the underlying estate as forcibly as to the public easement.

And lastly, it cannot be said that the rule so long followed has been productive of such injury or injustice that public policy requires its abrogation. Almost invariably an adverse possession of land is manifested by acts occurring only on the surface and consists solely of the control of the surface. The subordinate estate, the estate which can be enjoyed without control of the surface, is not disturbed or injured in any manner by the ordinary or usual adverse possession. Where, under the law, the hostile possession cannot operate upon the easement for the enjoyment of which the surface is necessary, and where no notice of any claim to the servient estate is brought home to the owner thereof, it would not occur to the ordinary mind that such possession would affect or divest such servient estate. To declare that it does, would cause injustice oftener than it would prevent it.

All these considerations are emphasized by the character of the possession upon which this hostile claim is asserted. There has been no actual occupancy of this tide land by the plaintiffs or their predecessors in interest. Their claim is based on the fact that the lines of the deed under which they claim extended out into the bay and included this tide land. If such constructive possession were allowed to accrue into a title, all that would be necessary to divest the state of the fee in the soil under the tide water would be to go into possession of upland under a deed which included any desired area of the soil under the ocean, claiming title to the entire tract, and hold the possession for the required time. The plaintiffs claim that there was evidence of actual possession; but we find that it consisted of mere occasional passage across the tide land to deep water and we cannot say that the implied finding on this point was contrary to the evidence. We find no error in the record.

The judgment is affirmed.

Sloss, J., concurred.

ANGELLOTTI, C. J., concurring.—I concur in the judgment, and in the opinion, except in so far as it deals with

the question of the effect of the statute of limitations. I am not prepared to hold that the statute will not run against the state as to tide land *with respect to the subordinate estate* which it holds in a proprietary capacity, and which it may convey subject to the paramount trust under which the state holds all tide land. This precise question, discussed at great length in the opinion, has never been expressly decided, and I do not think the conclusion reached by Mr. Justice Shaw is at all compelled by any previous expression of this court. Of course, it was involved in one or two of the cases cited, though probably never argued, and certainly never discussed in any opinion.

A discussion of this question is entirely unnecessary in this case. It appears here, as stated in the opinion, that the implied finding that the plaintiffs and their predecessor have not had *actual* possession of any of the tide land is sufficiently sustained by the evidence. Their real claim is that by virtue of a deed purporting to describe and convey to their predecessor such tide land and adjoining upland, the grantors being the owners of the upland, the subsequent possession by their predecessor and themselves of the upland carried constructive possession of the tide land. That such a claim is without good foundation is expressly held in *Wheatley* v. *San Pedro, etc. R. R. Co.* (L. A. No. 3299), *ante*, p. 505, [147 Pac. 135], decided March 4, 1915, where the question is exhaustively discussed, and it is not necessary to say more on the subject here. This sufficiently disposes of the contentions of plaintiff herein based on a claim by prescription or under the statute of limitations.

HENSHAW, J., concurring.—I concur in the judgment, but for reasons quite distinct from those announced in the prevailing opinion. The effort of appellants in this case was directed to establishing that they had acquired some sort of a prescriptive title to the lands in question,—a fee growing out of the *jus privatum* which is subject to the public control of the state under the *jus publicum*. It is learnedly argued, with an elaborate review of the authorities, that "this proposition has not heretofore had the approval of this court," and pains are taken to show that certain judgments of this court have been given which could not have been given if the right to acquire such a title existed. All this argument is super-

fluous in view of the fact that no court or jurisconsult ever conceived of the possibility of the existence of such a split fee until it was declared, or rather, I should say, was created by this court in *People* v. *California Fish Co.*, 166 Cal. 576, [138 Pac. 79], and *People* v. *Southern Pacific R. R. Co.*, 166 Cal. 614 et seq., [138 Pac. 94]. In those cases the people of California were for the first time advised that this state, in offering for sale the fee of certain of its tide lands, without the slightest reservation of any rights in the act authorizing the sale, and in making grants and patents of these lands, without the suggestion of a reservation or limitation upon the title, and in taking its citizens' money under these circumstances was practicing the art of a Jeremy Diddler by hoodwinking its citizens into the belief that they were acquiring a fee simple to lands, whereas in fact they were but acquiring a nondescript *jus privatum* which entitled them to use the lands until the state should retake them. The reason why no one of our early cases gives consideration to the proposition of this divided fee—the reason why no lawyer ever advanced it for the consideration of this court, is that it first came into existence in the law as the creation of this court in 1913. Indeed it is said in the cases above referred to that in our earlier decisions "the double right of the state, private and public, does not seem to have been suggested or considered." What more natural, since the creation by construction put on our tide land statute of this novel character of estate, than that litigants should come to this court for further definition of it and further light as to the method of its acquisition. Therefore, it seems to me a wholly unsatisfying answer to such litigants to say that because a title by prescription embraces the whole fee, and that because our earlier decisions do not recognize that one may acquire a partial fee subject to a governmental right, their appeals are groundless. If there be such a divided fee as that which this court has said exists, why should not the right to acquire it be open to every one as is their right to acquire any other property by the same means? This is but the first of many questions that are certain to arise under this newly-created fictional fee. The true and simple answer, under long and well-established principles of law, is that there is no such divided fee. That title to public land may not be acquired by prescription or adverse possession does not call for any refined and meticu-

lous reasoning, made necessary only by our new creation, but may still rest safely upon the old familiar principles that one who by occupancy, however open, tries to gain an exclusive right in such lands, is maintaining a continuous public nuisance in the first place, and, in the second place, regardless of the length of time of such occupancy, he will not be protected against the state for his invasion of its rights, for the reason that under such circumstances the state is never charged with notice that its rights are invaded. Wherefore, and still applying these old and familiar principles, if the asserted occupancy of the appellants was constructive merely, manifestly no prescriptive title could be acquired. If the occupancy was actual and visible, then if not under license or grant of the state, it was a mere purpresture, subject to abatement at any time at the will of the state. For these reasons I concur in the judgment.

Melvin, J., and Lorigan, J., concurred.