[L. A. No. 16715.  In Bank.—December 13, 1938.]

GEORGE I. MILLER et al., Petitioners, v. ARLIN E. STOCKBURGER, as State Director of Finance, et al., Respondents.

George R. Wickham for Petitioners.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondents.

O'Melveny, Tuller & Myers, Louis W. Myers, Chandler, Wright & Ward, Chandler P. Ward, George W. Trammell, Jr., City Attorney (Long Beach), Harlan V. Boyer, Assistant City Attorney, Henry D. Lawrence and John O. Palstine, Deputies City Attorney, Swaffield & Swaffield and Roland G. Swaffield, as *Amici Curiae,* on Behalf of Respondents.

THE COURT.—Petition for writ of mandate.  Petitioners sought to obtain oil prospecting permits under the Mineral Leasing Act of 1921 (Stats. 1921, chap. 303, p. 404), and

subsequent amendments thereto, on certain lands situated respectively in the cities of Long Beach and Los Angeles, within the respective harbor districts thereof. The petitioners contended that the lands were tide and submerged lands in their natural state and became vested in the state of California by virtue of its sovereignty at the time of its admission to the Union, and were artificially filled at some time prior to the year 1929. The city of Long Beach, appearing as *amicus curiae,* on behalf of respondents, contended that by act of the legislature of 1911 (Stats. 1911, p. 1304) it became the owner of the lands here involved lying within its corporate limits. That act read as follows: ''There is hereby granted to the city of Long Beach, a municipal corporation of the State of California, . . . all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all the tidelands and submerged lands, *whether filled or unfilled,* within the present boundaries of said city, and situated below the mean high tide of the Pacific Ocean, . . . '' for the establishment of a harbor, and for the construction of wharves, docks, piers, etc. (Emphasis added.)

However, the respondents contended that neither the 1911 grant to the city of Long Beach nor that of like character to the city of Los Angeles (Stats. 1911, p. 1256), conveyed the minerals, oil, gas or other hydrocarbon substances lying in or under said tide and submerged lands, whether filled or unfilled. Respondents further contended, that although the ownership of such minerals remained in the state, nevertheless such lands were not subject to prospecting permits, or leases thereunder, because of certain prohibitions in the Mineral Leasing Act of 1921, particularly sections 4 and 23 thereof, as amended in 1929 (Stats. 1929, chap. 7, p. 11; chap. 536, p. 944), which, they contended, specifically exempted the said tidelands and submerged lands from the operation of the Mineral Leasing Act. In accordance with these views, the respondents refused to issue the permits sought by petitioners and the latter thereupon sought to compel the issuance thereof by filing in this court a petition for a writ of mandate directed to respondents herein. The alternative writ issued, and respondents have filed a demurrer to the petition, which they contend should be sustained upon numerous grounds, the first of which is that during the pendency of this litigation the decision of this court in the

case entitled *City of Long Beach et al.* v. *Marshall,* 11 Cal. (2d) 609 [82 Pac. (2d) 362], has rendered moot the issues presented in this proceeding. In that case it was decided that the 1911 grant of the state of its tidelands to certain coastal cities, including the cities of Long Beach and Los Angeles, conveyed the mineral rights, including those in oil and gas, to those respective cities; and it is contended in the instant proceedings that since the alleged right of the petitioners to the issuance of the permits is dependent upon the ownership by the state of the lands in question, together with the oil rights thereto, the decision in the Marshall case has divested this court of authority to issue the writ, and that the demurrer should be sustained.

Since the filing of the decision in the Marshall case, the petitioners have asserted, however, that as to the greater portion of the area involved in the instant case the decision in the Marshall case "makes it inevitable that the petition for writ of mandate must be denied because of the holding that the title to the premises sought is in the City of Long Beach (and in the City of Los Angeles) and not in the State of California". They contend, however, that certain *portions* of the lands described in the petition belong to the state of California and are not included in the grants to the city of Long Beach and to the city of Los Angeles, respectively, and ask that the writ issue with respect to *such portions.* With regard to their contention that certain portions of the lands referred to in their petition did not pass by the grant of the state to said cities, they rely upon the case entitled *Strand Improvement Co.* v. *Long Beach,* 173 Cal. 765 [161 Pac. 975], wherein they assert it was held that the grant embraced only the tide and submerged lands situated *below* the line of high tide, and which were filled prior to May 1, 1911, the date of the respective acts, or otherwise stated, that by the Strand case it was held that land which was *filled* and and *above* high tide at the date of the grant, did not pass by the grant,—and that the portions of the lands they now contend did not pass to the respective cities, and to which they are entitled to permits, *were filled prior to 1911,* and were above the line of mean high tide, over which the tide did not ebb and flow on said May 1, 1911. They contend also that the language of the respective granting acts supports this

contention, wherein it is provided that the grant shall cover " . . . the right, title and interest of the state in and to all the tidelands and submerged lands, *whether filled or unfilled*, within the present boundaries of said city and situated *below* the line of mean high tide of the Pacific Ocean''. (Emphasis added.) The respondents call attention to the fact that no claim is made in the petition that the lands were filled prior to 1911, but that, on the other hand, the petition shows affirmatively that the lands therein described were artificially filled at a time prior to January 1, 1929, some eighteen years later. Nor does the record disclose by description or otherwise, what particular portions of the lands referred to in the petition it is now contended are owned by the state and open for prospecting permits.

Respondents also point out that the Strand case relied upon by petitioners is not authority for their contention with regard thereto, in that the court in that case was considering the question of accretion or alluvion, formed by the natural movement of the tides, and not by *artificial* means such as are alleged to have been used with regard to the lands here involved; and in that regard they contend that the case entitled *Patton* v. *City of Los Angeles,* 169 Cal. 521, at pages 525 and 526 [147 Pac. 141], decides the question adversely to petitioners' contention. There the court was considering the question of ownership of tidelands which had been artificially filled prior to 1911, and concluded that such land retained its character as tideland and was included in the 1911 grant to the city of Los Angeles. The respondents further contend that by the language of the granting acts of 1911, the legislature intended that all the lands described in the petition were intended to be granted by the state to the respective cities here involved, by its use of the language, "all of the right, title and interest of the state in and to all of the tidelands and submerged lands, *whether filled or unfilled*" (emphasis added), and that to hold that the legislature only intended to convey title to lands which lay below the line of mean high tide on May 1, 1911, would be to ignore the qualifying word "filled"; and that in such case it would have been unnecessary to say anything at all about the lands being filled or unfilled for, obviously, all lands which in fact lie below the line of mean high tide of the Pacific Ocean are in fact tidelands or submerged lands; that in expressly

providing that the grant included tidelands and submerged lands, whether filled or unfilled, the legislature intended to include something *more* than would have passed by a grant merely of ''tidelands and submerged lands situated below the line of mean high tide''. It would seem clear that the only lands which the legislature could possibly have had in mind which were not included in the description ''tidelands and submerged lands . . . situated below the line of mean high tide'' would be lands which formerly had been situated below said mean high tide line, but which at the time of the grant, had been filled in such manner as not to lose their character as tidelands or submerged lands. As was said in the Marshall case, '' . . . the history of tideland grants in this state, and the actions of the various legislatures and the courts in connection therewith, show a general agreement that the tidelands were conveyed to municipalities in fee, subject only to the public trusts and the limitations and reservations specified in the acts; and that until the discovery of these valuable oil rights in the southern California tidelands no serious doubt was ever expressed as to the title of the municipalities''. Nowhere in either of the granting acts here involved is there to be found any language which indicates that the state intended to reserve unto itself any unspecified or indeterminate portions of the tidelands there granted, but the very purpose of the acts was to encourage the development of the tidelands and submerged lands by the cities, for the promotion of commerce and navigation.

In 26 California Jurisprudence, page 306, it is said, '' . . . accretions caused by railroad embankments cannot operate to divest the title of the state to its tidelands, or to transfer them to the adjoining littoral owners. And so if tidelands are reclaimed, the change in the character of the land does not have the effect of transferring it to the owners of the abutting upland''. (*Patton* v. *City of Los Angeles,* 169 Cal. 521, 525 [147 Pac. 141].)

From the foregoing it follows that by virtue of the language of the granting acts of 1911, the state conveyed '' 'all' the right, title and interest . . . held by said state . . . in and to 'all' the tidelands and submerged lands, whether filled or unfilled'' to the respective cities of Long Beach and Los Angeles, and that the portions of the lands here concerned, having been tide and submerged lands in their former state, passed to the said cities of Long Beach

and Los Angeles, respectively, by the 1911 grants. No opinion, however, is expressed or intended as to the ownership of the lands here involved as between the respective cities and private claimants.

In view of the conclusions herein reached, it is unnecessary to discuss other questions presented by the record.

The demurrer is sustained; the alternative writ discharged, and a peremptory writ denied.